Charles **UZZELL**, Plaintiff,

v.

Charles J. **SCULLY**, Superintendent, Green Haven Correctional Facility; **W.L. Wright**, Correctional Captain; and **J.A. Dolan**, Correction Sergeant, Defendants.

No. 91 Civ. 2473 (SAS).

United States District Court, S.D. New York.

July 10, 1995.

---

Charles Uzzell, plaintiff pro se.

Marilyn T. Trautfield, Asst. Atty. Gen., New York City, for defendants Charles J. Scully, Superintendent, Green Haven Correctional Facility, W.L. Wright, Correctional Captain, and J.A. Dolan, Correction Sergeant.

## MEMORANDUM OPINION

SCHEINDLIN, District Judge.

Pro se plaintiff, Charles Uzzell, brings this action for monetary damages under 42 U.S.C. § 1983 for alleged violations of his Fourteenth Amendment Due Process rights. Plaintiff now moves for partial summary judgment pursuant to Fed.R.Civ.P. 56. Defendants have cross-moved for summary judgment. For the reasons stated below, plaintiff's motion is denied, and defendants' motion is granted.[1]

## FACTUAL BACKGROUND

At times relevant to this action, plaintiff was an inmate of the Green Haven Correctional Facility ("Green Haven"), Stormville, New York. *See* Affidavit of Marilyn Trautfield ("Traut.Aff.") at ¶ 2. On July 7, 1990, plaintiff was placed in keeplock pending a

disciplinary hearing for allegedly violating Rule 113.13, "Inmate Shall Not Be Under the Influence of Intoxicants" and Rule 106.10, "Refusing Direct Order." Traut.Aff. at ¶ 3 and Plaintiff's Complaint ("Compl.") at ¶¶ 5, 7, 8. The incident giving rise to these charges occurred on July 7, 1990 at approximately 8:15 p.m. Traut.Aff. at ¶ 4.

On July 8, 1990, at 8:28 p.m., plaintiff was served with a copy of an Inmate Misbehavior Report.[2] Compl. at ¶ 9. On July 9, 1990 at 8:44 a.m., approximately twelve (12) hours after the misbehavior report was served upon plaintiff, Correctional Captain W.L. Wright, commenced a Tier III Disciplinary Hearing. Compl. at ¶ 10, Traut.Aff. at ¶ 5.

At the hearing, plaintiff pled "not guilty" to the charge of violating Rule 113.13 and pled "guilty with an explanation" to the charge of violating Rule 106.10.[3] Traut.Aff. at ¶ 6. The hearing was adjourned until July 10, 1990. Traut.Aff. at ¶ 9. Plaintiff was found guilty of both charges and was sentenced to forty-five (45) days in keeplock from July 10, 1990 to August 23, 1990, with credit for one day served.[4] Traut.Aff. at ¶ 10.

On July 12, 1990, plaintiff requested from First Deputy Superintendent C. Artuz, a copy of the Green Haven Policy and Procedure.[5] Compl. at ¶ 16. Artuz denied plaintiff's request claiming that "the policy is designated for staff only." Compl. at ¶ 17. Plaintiff eventually obtained a copy by other

---

1. Plaintiff has apparently withdrawn his suit against defendant Charles J. Scully by conceding that Scully should be granted summary judgment. *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("Pl.Mem.") at pp. 15–16.

2. The Inmate Misbehavior Report, signed by Sergeant Dolan, reads in relevant part: "On 7-7-90 at approx. 8:15 p.m. I (Sgt. Dolan) received a call from C.O. Goff ... that an inmate ... was sick or something. I ... found inmate Uzzell, Charles.... I gave Uzzell three direct orders to come with me to the office.... Uzzell refused to leave the yard and kept saying in a slurred voice, 'I am not going in there. You have your goon squad waiting for me.' While waiting for the yard to close I stood next to [sic] Uzzell who was sitting on a bench. Uzzell fell asleep during this time. When the yard closed Uzzell had to be

carried out of the yard by two inmates under my supervision. At approx. 8:35 p.m. Uzzell refused to take a breath alcohol test." Traut.Aff. at Ex. A and Compl. at ¶ 8.

3. Plaintiff explained that he did not refuse to take the breathalizer test, but rather did not respond because he was asleep. Compl. at ¶ 12.

4. Plaintiff's alleged refusal to take the breathalizer test resulted in an automatic finding of and a disposition of guilt. *See* Traut.Aff. at Ex. B, p. 2 and Reply and Supplemental Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Reply") at Appendix, p. 2.

5. The Policy and Procedure (# 225) governs the procedure to be followed in cases of suspected alcohol intoxication. Compl. at ¶ 16 and Reply at Appendix, pp. 1–3.

means. Compl. at ¶ 18. On or about July 16, 1990, plaintiff filed an appeal from the disposition of the disciplinary hearing.[6] Traut.Aff. at ¶ 11 and Compl. at ¶ 19.

On July 30, 1990, Artuz directed all areas to dismiss and expunge the hearing from all records due to a procedural error.[7] Compl. at ¶ 23 and Traut.Aff. at Ex G. All records of this hearing have been expunged from Green Haven's records. Traut.Aff. at ¶ 12. Plaintiff served twenty-three days of the forty-five day sentence before he was released from keeplock. Compl. at ¶ 24 and Traut. Aff. at ¶ 13.

## RELEVANT LEGAL PRINCIPLES

■ Summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Mays v. Mahoney*, 23 F.3d 660, 662 (2d Cir.1994); *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). To grant a motion for summary judgment the Court must determine that a reasonable finder of fact could not find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ The moving party bears the burden of proving that there is no genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party succeeds in meeting its burden, the burden shifts to the non-moving party to come forth with evidence of specific facts showing that a genuine issue exists. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

## DISCUSSION

### A. Twenty–Four Hours Notice of the Disciplinary Hearing

■ An inmate may be confined to keeplock, or administrative segregation, pending an investigation into an alleged disciplinary violation. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). In New York, keeplock may be imposed when an officer reasonably believes that a prison rule has been violated. *See Soto v. Walker*, 44 F.3d 169 (2d Cir.1995). Liberally construing the pro se complaint, plaintiff alleges that he has a constitutionally protected liberty interest to be free from wrongful confinement in keeplock. *See* Compl. at ¶¶ 24 and 28. He claims that his due process rights were violated because he was not given at least twenty-four hours notice of the charges against him and thus was unable to prepare a defense to present at the disciplinary hearing. *See* Compl. at ¶ 11 and Affidavit of Charles Uzzell in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("Pl.Aff.") at ¶ 14 and Ex. F. As a result, according to Uzzell, he spent twenty-three days in keeplock. Compl. at ¶ 24 and Traut.Aff. at ¶ 13.

While prisoners are not left devoid of all rights, incarceration does impose limits upon many of them. *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). This "retraction [is] justified by the considerations underlying our penal system." *Id.* at 555, 94 S.Ct. at 2974 (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)).

■ On June 19, 1995, the United States Supreme Court "sound[ed] the death knell" for claims alleging that the imposition of keeplock necessarily entitles inmates to a liberty interest which would invoke the procedural due process protections guaranteed by the Fourteenth Amendment to the United

6. In his appeal, plaintiff alleged that he was not given at least twenty four hours to prepare a defense and that he was denied access to the Policy and Procedure and thus could not properly prepare for his defense. *See* Traut.Aff. at Ex. F and Compl. at ¶¶ 20 and 21.

7. It is not clear from the vague term "procedural error" exactly why the disposition of the disciplinary hearing was reversed. It may have been reversed due to denial of plaintiff's request for the Policy and Procedure or due to the lack of twenty four hours notice. *See* Traut.Aff. at Ex. G.

States Constitution. *See Winters v. Warden,* No. 95 C 3535, 1995 WL 382505, 1995 U.S.Dist.Lexis 8739, at *3 (N.D.Ill. June 23, 1995) (quoting *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 No. 93–1911, 1995 WL 360217 (U.S. June 19, 1995)). In *Sandin,* Chief Justice Rehnquist stated that no liberty interest is created by the imposition of segregated confinement.[8] *Sandin,* at ——, 115 S.Ct. at 2299–2300. Prisoners maintain a liberty interest only in those situations imposing "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2300. Consequently, the procedural due process requirements set forth in *Wolff,* including twenty-four hours notice, are not triggered by confinement in keeplock as a prisoner does not have a protected liberty interest in remaining free from such confinement.[9]

■ While Uzzell is correct in asserting that the hearing officer has discretion with respect to penalties imposed upon inmates when an infraction has occurred, such discretion does not implicate a liberty interest and give rise to a claim that due process has been violated. *See* Reply of Charles Uzzell ("Pl.Reply") at ¶ 14 and Ex. H; *Wolff,* 418 U.S. at 551, n. 8, 94 S.Ct. at 2970–72, n. 8. Because Uzzell's penalty was keeplock, and not loss of good time credit, no liberty interest was invoked and thus he was not deprived of procedural due process by the

State's failure to adhere to its twenty-four hour notice Rule.[10]

Because Uzzell was placed in keeplock as a result of the disciplinary charges, he has no standing to bring a claim under 42 U.S.C. § 1983, alleging a deprivation of his constitutional right to due process. Thus, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted with respect to timely notice of the disciplinary hearing.

**B. *Other Allegations of Procedural Violations***

Plaintiff also complains of additional procedural violations:

1. Sergeant Dolan allegedly did not follow the proper procedures in that he failed to get the approval of the Watch Guard, Lieutenant Robertson, prior to directing plaintiff to take a breathalizer test. Compl. at ¶ 18. However, as is evident from the form entitled, "Request for Breath Test," Lt. Robertson did approve. *See* Traut.Aff. at Ex. B, p. 1.

2. Sergeant Dolan did not call medical staff to evaluate plaintiff nor ask plaintiff to go to the hospital. Compl. at ¶ 13.

3. First Deputy Superintendent, C. Artuz, denied plaintiff's request to obtain a copy of the Policy and Procedure. Compl. at ¶ 17. Apparently, plaintiff asked for a copy on July 12, 1990—after his disciplinary hearing—and

8. The *Sandin* ruling should apply retroactively to the case at bar for "[a]s a rule, judicial decisions apply 'retroactively.'" *Solem v. Stumes,* 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1983), citing *Robinson v. Neil,* 409 U.S. 505, 507–508, 93 S.Ct. 876, 877–878, 35 L.Ed.2d 29 (1973). Although, historically, there exists a presumption against statutory retroactivity, this presumption does not apply to judicial decisions. *Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994). "[A] legal system based on precedent has a built-in presumption of retroactivity." *Solem,* 465 U.S. at 642, 104 S.Ct. at 1341. "[I]n many situations, a court should 'apply the law in effect at the time it renders its decision' even though that law was enacted after the events that gave rise to the suit." *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1501, (quoting *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974)).

9. It is important to note, however, that when prisoners are deprived of a protected liberty interest, the due process protections of *Wolff* are invoked. For example, if Uzzell's penalty for violating Rule 106.10, "Refusing Direct Order," resulted in a loss of good time credit, as mandated by state law, the procedural due process requirements of *Wolff* would have been triggered because such state law would have created a "liberty interest in a 'shortened prison sentence' which resulted from good time credits." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2297 (quoting *Wolff,* 418 U.S. at 557, 94 S.Ct. at 2975).

10. Prison officials, of course, are required to adhere to their own rules. Prisoners may still administratively challenge their keeplock confinement, as Uzzell did, by raising a claim of procedural error, such as failure to provide twenty-four hours notice of a hearing or failure to permit a prisoner to call witnesses on his behalf.

eventually obtained a copy sometime prior to July 16, 1990, when he filed an appeal. *See* Compl. at ¶¶ 17, 18, 19.

■ Defendants move for summary judgment with respect to these alleged due process violations. Because plaintiff's allegations, even if true, did not "[impose] atypical and significant hardship ..." upon him and thus did not result in the deprivation of a protected liberty interest, plaintiff's right to due process has not been violated. *Sandin*, —— U.S. at ——, 115 S.Ct. at 2298–99. Thus, defendants' motion for summary judgment is granted with respect to these issues.

### CONCLUSION

For the reasons discussed above, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted.

SO ORDERED: