**Leo A. MARINO, Plaintiff,**

v.

**H. KLAGES, F. Bennett;  Donald Selsky; Philip Coombe, Defendants.**

**No. 95–CV–1475(FJS)(GJB).**

United States District Court, N.D. New York.

March 27, 1997.

---

5.  The motion for summary judgment is mistaken-                    ly docketed twice.

Leo A. Marino, South Ozone Park, NY, Plaintiff, pro se.

Dennis C. Vacco, Office of the Attorney General, State of New York (Howard L. Zwickel, Asst. Attorney General, of counsel), Albany, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

Presently before the Court is the Report–Recommendation of the Honorable Magistrate Judge Gustave J. DiBianco. In the underlying action, the Plaintiff, Leo A. Marino, previously an inmate in the New York State Department of Corrections ("DOCS"), brings a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that his due process rights were violated in connection with his Tier III disciplinary hearing held on October 28, 1994. The punishment imposed as a result of that hearing was 300 days in the Segregated Housing Unit ("SHU") confinement, and the recommended loss of 300 days of "good time." Defendants move to dismiss the Plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim, arguing that the punishment imposed does not implicate a constitutionally protected "liberty interest," in light of *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

In his Report–Recommendation, Judge DiBianco found that a Tier III disciplinary hearing did implicate a protected liberty interest because the potential penalty involved could constitute a "significant and atypical"

hardship under *Sandin*. In addition, Judge DiBianco found that the loss of good time could implicate a protected liberty interest if it ultimately affected the length of the Plaintiff's sentence. As such, Judge DiBianco found that the complaint stated a claim and recommends that this Court deny the Defendants' motion.

Defendants object to the Report–Recommendation for the following reasons: (1) the majority of the district court decisions in this Circuit base their liberty interest determination on the actual punishment imposed, not the potential penalty; (2) these district court decisions have generally established that any disciplinary SHU confinement less than a year is not "significant and atypical;" and (3) based on New York State disciplinary regulations, the loss of good time is only tentative and creates only a possibility of early release which can not constitute a state created "liberty interest."

## Discussion

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must make a de novo determination of those portions of the Magistrate's Report–Recommendation which have been specifically objected to by a party. Thus, the Court will consider whether the Plaintiff has stated a claim under 42 U.S.C. § 1983 for deprivation of procedural due process rights under the Fourteenth Amendment.

In evaluating a motion to dismiss for failure to state a claim, the court must "accept as true all the factual allegations in the complaint" and draw all reasonable inferences in favor of the plaintiffs. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 163–65, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir.1992). "[T]he court should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ricciuti v. N.Y.C. Transit Au-*

*thority*, 941 F.2d 119, 123 (2d Cir.1991) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

■■■ In the context of making out a procedural due process claim under 42 U.S.C. § 1983, as a threshold requirement a plaintiff must show that a protectible "liberty interest" is at stake. Lawfully incarcerated prisoners, however, " 'retain only a narrow range of protected liberty interests.' " *Klos v. Haskell*, 48 F.3d 81, 86 (2d Cir.1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)) Liberty interests protected by the due process clause can be derived directly from the due process clause itself, or they can be derived from the laws of the states. *Id*. In order to find that a state regulatory scheme creates a liberty interest, the plaintiff must establish (1) that the confinement or punishment "creates an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' " and (2) that the liberty interest was created by state statute or regulation. *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (quoting *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300).

■■■ Plaintiff alleges that the Defendants' conduct with respect to the Tier III hearing violated his procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution. The constitutional injury alleged in the Plaintiff's complaint stems from the punishment assessed him in a Tier III disciplinary hearing.[1] As a result of the hearing, the Plaintiff received a punishment of 300 days in the SHU and a recommendation of the loss of 300 days of "good time." As stated, Judge DiBianco found that, because a Tier III disciplinary hearing had the potential for an SHU confinement of greater than one year, and because such confinement could constitute a "significant and atypical hardship," the Tier III disciplinary proceedings would implicate a "liberty interest" and require certain procedural protections. In addition, Judge Di-

---

1. At that hearing, Plaintiff alleges that he was denied the opportunity to defend against the charges because the Defendants failed to disclose an "Unusual Incident Report" and a "Use of Force Report" to the Plaintiff prior to the hear-

ing. Plaintiff alleges the Defendant Bennett "ordered" the hearing, Defendant Klages was the hearing officer, and Defendants Selsky and Coombe affirmed the disposition of the hearing.

Bianco found that the regulations concerning "good time" could create a liberty interest if the deprivation of "good time" affected the length of the sentence.

The determination of whether a "liberty interest" exists in the context of prison discipline must begin with the Supreme Court's decision in *Sandin v. Conner*. In *Sandin*, the Supreme Court established a new test for determining whether administrative or disciplinary actions taken in prisons which alter the conditions of a prisoner's confinement require constitutional procedural protections. Prior to *Sandin*, the Court focused on whether prison officials' actions were taken pursuant to mandatory or discretionary statutes or prison regulations to determine whether they implicated a "liberty interest" for purposes of procedural due process. *Sandin*, 515 U.S. at 481–83, 115 S.Ct. at 2299. Mandatory language could create a state created liberty interest in the subject matter of the statute or regulation. *See e.g., Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983) (the transfer of prisoner from one prison to another did not implicate a liberty interest because the authorizing regulation was discretionary). However, with this sort of analysis, "the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Sandin*, 515 U.S. at 481, 115 S.Ct. at 2299. As a result, disincentives were created for the states to codify prison management procedures, and the federal courts had to become involved with the day-to-day management of the prisons. *Id.* In response to this undesired result, the *Sandin* Court decided that constitutional due process protections are only implicated when the denial of a state created "interest" imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. at 2300.

Applying this criteria to disciplinary confinement in the SHU, district courts in the Second Circuit have generally found that any SHU confinement under a year in time is not an atypical or significant hardship on the prisoner. *Carter v. Carriero*, 905 F.Supp. 99, 103–04 (W.D.N.Y.1995) (270 day confinement in the SHU is not significant and atypical); *Nogueras v. Coughlin*, No. 94–CV–4094, 1996 WL 487951, at *5 (S.D.N.Y., August 27, 1996) (210 days in SHU confinement); *Polanco v. Allan*, No. 93–CV–1498, 1996 WL 250237, at *3 (N.D.N.Y., May 6, 1996) (365 days); *but see Justice v. Coughlin*, 941 F.Supp. 1312, 1324 (N.D.N.Y.1996) (atypicality should be determined based on the highest potential penalty received in the disciplinary hearing, not actual penalty imposed).

In his Report–Recommendation, Judge DiBianco relies on the reasoning set forth in *Justice*, finding that because the potential penalty in a Tier III disciplinary hearing could result in confinement for more than one year, the presence of a state created liberty interest should be presumed. The Second Circuit has not yet addressed whether the "potential penalty" approach should be read into the Supreme Court's decision in *Sandin* for purposes of identifying whether there is a "significant and atypical hardship" implicated. However, it is the view of this Court in light of the reasoning set forth in *Sandin*, i.e., limiting due process protection to those cases where a certain degree of hardship is imposed, that the application of the "potential penalty" approach would be an unwarranted extension of this limitation.[2] Thus, consistent with *Sandin*, this Court declines to adopt the "potential penalty" approach advanced by Magistrate Judge DiBianco, in favor of the prevailing practice in the Second Circuit of examining the actual penalty imposed when evaluating "atypicality." *Accord Morris v. Dann*, No. 95–CV–975, 1996 WL 732559, at *4 (N.D.N.Y., Dec. 11, 1996). Therefore, the Court finds that the Plaintiff's SHU confinement of 300 days does not implicate a state created liberty interest.

■ The Court also declines to adopt the Magistrate Judge's finding that the loss of good time could create a liberty interest.

---

2. The Supreme Court in *Sandin* did not conduct its analysis in consideration of the potential penalty involved in the disciplinary hearing, but instead based its reasoning on the penalty that was actually imposed. *Sandin*, 515 U.S. at 485–86, 115 S.Ct. at 2301.

The district courts in this circuit have disagreed over whether the loss of good time as a result of a disciplinary hearing implicates a liberty interest, post *Sandin. Miller v. Selsky,* No. 94–CV–139, at 7–8 (N.D.N.Y., November 22, 1995) ("New York Law does not create a vested liberty interest triggering the procedural due process protection described in *Wolff.* in the potential loss of good time credits"); *Turner v. Silver,* No. 93–CV–1099, at 3 (N.D.N.Y., April 2, 1996) (loss of good time does not represent an atypical and significant hardship); *but see Morris,* 1996 WL 732559, at * 5 (the issue of whether the loss of good time is atypical and significant is open in the Second Circuit); *Uzzell v. Scully,* 893 F.Supp. 259, 263 (S.D.N.Y.1995) (suggested in dicta that the loss of good time credit would have created a liberty interest in a shortened sentence); *Martinez v. Coombe,* No. 95–CV–1 147, 1996 WL 596553, at *6 (N.D.N.Y., Oct.15, 1996) (found that *Wolff* and *Sandin* require that a liberty interest be found in the loss of good time).

Both *Uzzell* and *Martinez* rely directly on *Sandin*'s confirmation of the holding of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff,* the Supreme Court "held that the Due Process Clause itself does not create a liberty interest in credit for good behavior, but that the statutory provision at issue in that case *created* a liberty interest in a 'shortened prison sentence' which resulted from good time credits which were revocable only if the prisoner was guilty of serious misconduct." *Sandin,* 515 U.S. at 477–78, 115 S.Ct. at 2297 (quoting *Wolff,* 418 U.S. at 557, 94 S.Ct. at 2975 (emphasis added)).

This Court agrees that *Sandin* makes clear that the holding of *Wolff* is still good law. In *Wolff,* however, the Court found a liberty interest in the loss of good time only because the Nebraska statutory scheme *created* a right to a shortened sentence.[3] In contrast, New York statutes and regulations regarding good time make it clear that prisoners have no right to good time or a shortened sentence from its accumulation. N.Y.

Correct. Law § 803(1), (4). Disciplinary hearings can only "recommend" the loss of good time. The recommendation is only tentative until the "Time Allowance Committee" meets four months before the minimum term of the sentence, and makes a determination of how much good time to award, subject to review by the Commissioner of DOCS whose discretion is unfettered. N.Y. Comp. Codes R. & Regs. tit. 7 § 260.4(b); *Matter of Amato v. Ward,* 41 N.Y.2d 469, 474, 393 N.Y.S.2d 934, 362 N.E.2d 566 (1977). In making this determination, the Time Allowance Committee is required to view the entire record of the prisoner and exercise discretion to "appraise the entire institutional experience of the inmate." 7 NYCRR § 261.3(c). As such, the award of good time in New York can only create a possibility of early release for the prisoner. It has long been the law that, in New York, there is no constitutionally protected liberty interest in the possibility of early release from prison. *See e.g., Boothe v. Hammock,* 605 F.2d 661 (2d Cir.1979). Therefore, the Court declines to adopt Magistrate Judge DiBianco's recommendation and finds that there is no "state created" liberty interest in good time credits in New York because the state regulations have not created such a right. Since there is no state created liberty interest and, consistent with *Wolff,* there is no inherent due process right to good time credits, the Plaintiff has failed to state a claim for a Fourteenth Amendment violation.

### Conclusion

Having carefully reviewed the Defendants' objections, Magistrate Judge DiBianco's Report–Recommendation, and the applicable law on the matter, the Court declines to adopt Judge DiBianco's Report–Recommendation for the reasons set forth in this decision. Therefore it is hereby

ORDERED that the Defendants' Fed. R.Civ.P. 12(b)(6) motion to dismiss the Plaintiff's complaint for failure to state a claim is GRANTED, for the reasons set forth above; and it is further

---

3. The Court in *Wolff* found that Nebraska created a statutory right to good time through the use of mandatory language, and also provided that it could be forfeited only in instances of serious misconduct. *Wolff,* 418 U.S. at 557, 94 S.Ct. at 2975.

ORDERED that the Plaintiff's complaint is dismissed in its entirety.

**IT IS SO ORDERED.**