Cecilio **EASTMAN**, Plaintiff,

v.

**Hans WALKER, Superintendent of Auburn Correctional Facility; Edward Dann, Deputy Superintendent of Auburn Correctional Facility; and G. Richards, Correctional Lieutenant at Auburn Correctional Facility, et al., In Their Individual and Official Capacity, Defendants.**

No. 92–CV–812.

United States District Court,
N.D. New York.

July 31, 1995.

**32**

Cecilio Eastman, Fallsburg, NY, pro se.

Dennis C. Vacco, Office of Atty. Gen., State of N.Y., Dept. of Law, Albany, NY (Sue H.R. Adler, Asst. Atty. Gen., of counsel), for defendants.

## MEMORANDUM, DECISION AND ORDER

McAVOY, Chief Judge.

This matter was referred to Magistrate Judge David N. Hurd for a Report–Recommendation pursuant to a Standing Order dated August 2, 1985. The Magistrate Judge's Report–Recommendation recommends that Defendants' Motion for Summary Judgment be granted because Plaintiff's claim lacks any genuine issue of material fact.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. He contends that his Fourteenth Amendment due process rights and his Eighth Amendment right to be free from cruel and unusual punishment were violated when he was confined to keeplock without notice and an opportunity to be heard to contest his confinement. Defendants have moved for summary judgment on the ground that they are qualifiedly immune from suit.

## I. BACKGROUND

Plaintiff was confined to keeplock on August 4, 1990 at Auburn Correctional Facility ("Auburn") one day after the fire bombing of another inmate's cell. Christopher Timmons, the inmate in that cell, suffered burns over 40 percent of his body. Dann Aff. at 3, ¶ 7; Unusual Incident Report, 8/6/90, Exh. "A." Defendant allegedly placed Plaintiff in keeplock after receiving confidential information as to Plaintiff's involvement in the bombing. Exh. "G," ¶ IV. Defendant Richards, as Day Watch Commander, directed the investigation of the bombing, see Dann Aff. at 3, ¶ 7, and on August 8, 1990, after a four day delay in which Plaintiff remained in keeplock without the opportunity to contest his confinement, recommended that Plaintiff be placed in administrative segregation. Dann Aff. at 3–4, ¶¶ 8, 9; Administrative Segregation Recommendation Form, 8/8/90, Exh. "B."

Prior to the administrative segregation recommendation, Plaintiff was interviewed by Lieutenant A. Jackson. Dann Aff. at 4, ¶ 9; Administrative/Protective Custody Interview Form, 8/9/90, Exh. "C." This was the first time Plaintiff was allowed to contest his confinement to keeplock since being so confined on August 4, 1990. On August 9, 1990, Plaintiff was served with an administrative segregation recommendation form, Dann Aff. at 4, ¶ 9, and, upon permission, selected an employee assistant to aid in his defense. Dann Aff. at 4, ¶ 11, Exh. "D." Plaintiff then remained in administrative keeplock until August 18, 1990, pursuant to N.Y. COMP. CODES R. & REGS. tit. 7, § 301.4(a) (1991).[1] During that time, defendants began processing his transfer from Auburn.

Defendants assert that Defendant Dann's receipt of sufficient information prompted the transfer in lieu of continued administrative segregation. Dann Aff. at 5, ¶ 12; Program Security and Assessment Summary Form, 8/6/90, Exh. "G." Plaintiff was transferred into the general population at Clinton Correctional Facility on August 18, 1990. Dann Aff. at 5, ¶ 14; see Program and Security Assessment Summary Form, 8/17/90, Exh. "H." Plaintiff then brought the instant civil rights action.

---

1. Pursuant to N.Y.COMP. CODES R. & REGS. tit. 7, § 301.4(a), a hearing must be held within

fourteen days of confinement to administrative segregation.

The Magistrate Judge found no constitutional violations surrounding the lack of a hearing and the lack of an initial interview despite Plaintiff's claim, nor did he find proof of cruel and unusual punishment. After careful review of Plaintiff's Objections to the Magistrate Judge's Report–Recommendation, this Court agrees with the Magistrate Judge. This Court, however, addresses Plaintiff's claim that the fourth day of his keeplock time was an unconstitutional deprivation of a state-created liberty interest because it appears to remain outstanding despite the Report–Recommendation.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Standard for Summary Judgment

According to Fed.R.Civ.P. 56(c) and 56(e), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See* Fed.R.Civ.P. 56(c), (e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand,* 807 F.2d 44 (3d Cir.1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Eastway Constr. Corp. v. New York,* 762 F.2d 243, 249 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

### B. The Existence of a Constitutionally Protected Liberty Interest

#### 1. Basis for Plaintiff's Fourteenth Amendment Claim

 Plaintiff contends that New York's corrections regulation, N.Y.COMP. CODES R. & REGS. tit. 7, § 251–1.6 (1989), suffices to establish Plaintiff's liberty interest. Section 251–1.6(a) states that a guard may confine an inmate to his cell, room, or housing for administrative reasons [2] when "he represents an immediate threat to the safety, security or order of the facility," or presents a danger to others or property. Section 251–1.6(b) says that such confinement may also result where it is "reasonably necessary for protection of the inmate."

Since Plaintiff's confinement to "keeplock" status did not change to "administrative segregation" status until ninety-six hours after he was so confined, Plaintiff believes that a liberty interest has been violated. Section 251–1.6 states that the keeplocked inmate's confinement status must be changed within seventy-two hours. Specifically, the prison regulation asserts that, after seventy-two hours of keeplock, the inmate shall be transferred to another housing unit, scheduled for transfer to another facility, released from the confinement, or placed in protective custody. N.Y.COMP. CODES R. & REGS. tit. 7, § 251–1.6. Plaintiff believes that this regulation creates a liberty interest.

#### 2. The *Sandin* Decision Narrows Instances Where a State Regulation Creates a Constitutionally Protected Liberty Interest

The holding and rationale of a recent United States Supreme Court decision refutes Plaintiff's aforementioned claim. There is no liberty interest created by Section 251–1.6.

In *Sandin v. Conner,* — U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court "reexamine[d] the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause." *Sandin v. Conner,* — U.S. ——, ——, 115 S.Ct. 2293, 2296, 132

---

**2.** It is important to note the administrative nature of the instant sanction since this determination shall affect the Court's disposition of Plaintiff's due process claim. Different due process protections are afforded those inmates subject to administrative penalties than those inmates subject to punitive sanctions. *Hewitt v. Helms,* 459

U.S. 460, 473, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983), *overruled in part by, Sandin v. Conner,* — U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.1988), *cert. denied,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988); *Gomez v. Coughlin,* 685 F.Supp. 1291 (S.D.N.Y.1988).

L.Ed.2d 418. The Court reviewed the jurisprudential history of due process analyses within prisoners' cases involving state regulations. It found that since the Supreme Court's decision in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *overruled in part by Sandin*, —— U.S. ——, 115 S.Ct. 2293, which required an inquiry into:

> whether the State had gone beyond issuing mere procedural guidelines and had used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates,'[3] ... the Court has wrestled with the language of intricate, often rather routine prison guidelines to determine whether mandatory language and substantive predicates created an enforceable expectation that the state would produce a particular outcome with respect to the prisoner's conditions of confinement.

*Sandin*, —— U.S. ——, 115 S.Ct. at 2297 (citations omitted).

The *Sandin* Court noted that the *Hewitt* decision was the impetus for a panoply of claims because it shifted the focus of the liberty interest inquiry from the nature of the deprivation to the language of the regulation. Numerous prisoners, not unlike Plaintiff here, brought due process claims alleging that a state regulation contained mandatory language, thus creating some absolute liberty interest which had been deprived due to the deficient prison procedures. *See Sandin*, —— U.S. ——, 115 S.Ct. at 2299. The result has been "disincentives for States to codify prison management procedures in the interest of uniform treatment." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2299. Instead, "[s]tates may avoid creation of 'liberty' interests by having scarcely any regulation, or by conferring standardless discretion on correctional

personnel." *Id.* According to the Court, another poor result has been "the involvement of the federal courts in the day-to-day management of prisons" even though "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Id., quoting, Wolff v. McDonnell*, 418 U.S. 539, 561–563, 94 S.Ct. 2963, 2977–2978, 41 L.Ed.2d 935 (1974).

The above concerns convinced the *Sandin* Court to return to the "real concerns undergirding the liberty protected by the Due Process Clause" by a refocusing on "the due process principles ... correctly established and applied in *Wolff* and *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 [1976]." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2299.

### 3. The *Sandin* Standard

■ The *Sandin* Court instituted a new standard for courts addressing the issue of whether a prison regulation implicates a constitutional liberty interest. It recalled the established notion that "'[l]awful incarceration brings out the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Sandin*, —— U.S. ——, 115 S.Ct. at 2300, *citing, Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977), *quoting, Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). For that reason, restrictions imposed by a state regulation that limits an inmate's freedom, "while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," will not violate a constitutional liberty interest unless the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*,

---

**3.** This Circuit has held that N.Y.COMP. CODE R. & REGS. tit. 7, §§ 251–1.6 and 301.4(b) refer to a prison official's right to confine an inmate for administrative reasons when the inmate is determined to pose a threat to the safety and security of the facility. *Rosario v. Scully*, 1994 WL 572452 at *3 (S.D.N.Y.1994). Moreover, this Court has held that such confinement creates a liberty interest if the State's regulations require procedural protections through statutory language "directing that those procedures 'shall', 'must', or 'will' be employed and that 'Administrative Segregation will not occur absent specified substantive predicates.'" *Russell v. Coughlin*, 910 F.2d 75, 77 (2d Cir.1990), *quoting, Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983), *overruled in part by, Sandin*, —— U.S. ——, 115 S.Ct. 2293. The Court notes that the Supreme Court's decision in *Sandin* refutes the rationale and outcome of the above case law.

—— U.S. at ——, 115 S.Ct. at 2299 (citations omitted).

#### 4. Applying the *Sandin* Standard

##### a. Twenty-four Hours of Additional Keeplock Did Not Violate Any Liberty Interest

Plaintiff incorrectly asserts that: (1) Section 251–1.6 creates a liberty interest; and (2) Defendants' violation of this regulation's seventy-two-hour limit by twenty-four hours violated that liberty interest. Section 251–1.6 does not create a liberty interest in remaining free from detention in keeplock beyond the regulation's limit of seventy-two hours. This additional day of keeplock did not alter Plaintiff's sentence so as to extend his term of imprisonment. Nor did it cause Plaintiff to suffer "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin*, —— U.S. at ——, ——, 115 S.Ct. at 2299, 2300.

First, as the *Hewitt* Court recognized, the circumstances and degree of an inmate's confinement are minimally effected when he is placed in administrative segregation. *Hewitt*, 459 U.S. at 473, 103 S.Ct. at 872. There is no reason to believe that administrative segregation will significantly effect an inmate's parole opportunities. *See id.* Such an inconsequential effect cannot be construed as "atypical" treatment or as causing "significant hardship." *See Sandin*, —— U.S. at ——, ——, 115 S.Ct. at 2299, 2300.

Second, the stigma that attaches with disciplinary or punitive segregation is not associated with administrative segregation under New York's laws. *Compare Hewitt*, 459 U.S. at 473, 103 S.Ct. at 872 (no stigma attaches since Pennsylvania's prison regulations do not suggest wrongdoing or misconduct when an inmate is administratively segregated). This further illustrates how the instant confinement fails to meet the *Sandin* requirement that the confinement be "atypical" and cause "significant hardship" in order for the Court to find a liberty interest at stake. *See Sandin*, —— U.S. at ——, ——, 115 S.Ct. at 2299, 2300.

Third, the Supreme Court acknowledged that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Rhodes v. Chapman*, 452 U.S. 337, 349, n. 14, 101 S.Ct. 2392, 2400, n. 14, 69 L.Ed.2d 59 (1981). Thus, the decision to keep an inmate in keeplock for ninety-six hours instead of seventy-two hours to ensure institutional security and safety is not "atypical" and does not impose a "significant hardship." *See Sandin*, —— U.S. at ——, ——, 115 S.Ct. at 2299, 2300. Therefore, this Court finds no violation of Plaintiff's Fourteenth Amendment rights because no liberty interest is created by N.Y.CODE R. & REGS. tit. 7, § 251–1.6.

#### D. Qualified Immunity and Defendants' Failure to Respond to Plaintiff's Interrogatory Requests

Because this Court finds no Fourteenth Amendment violation here, there is no need for Defendants to answer Plaintiff's interrogatories and no need for this Court to address the issue of Defendants' qualified immunity in regard to the fourth day Plaintiff spent in keeplock.

### III. CONCLUSION

In summary, the Court GRANTS Defendants' Motion for Summary Judgment and ORDERS that Plaintiff's Complaint be dismissed.