62 F.3d 80
 Raul RIVERA, Plaintiff-Appellee,
v.
Daniel A. SENKOWSKI, Superintendent at Clinton Correctional
Facility; P.J. Welch, Senior Counselor CCF; N.D.
Smith, Senior Counselor CCF; Migdalia
Rodriguez, Counsel CCF,
Defendants-Appellants,
John Doe, Movement & Classification, Albany, N.Y., Defendant.
 No. 1061, Docket 94-2436.
 United States Court of Appeals,
Second Circuit.
 Argued May 23, 1995.*
Decided Aug. 8, 1995.
 
 Raul Rivera, pro se.
 John McConnell, Asst. Atty. Gen., State of N.Y., Albany, NY (G. Oliver Koppell, Atty. Gen., and Peter H. Schiff and Peter G. Crary, Asst. Attys. Gen., of counsel) for defendants-appellants.
 Before: VAN GRAAFEILAND, KEARSE, and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Plaintiff Raul Rivera ("Rivera"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brought an action under 42 U.S.C. Sec. 1983 against certain officials at the Clinton Correctional Facility ("Clinton"), where he is currently incarcerated. Read liberally, his verified complaint alleges violations of the Eighth Amendment as well as his equal protection and procedural and substantive due process rights under the Fourteenth Amendment. Upon a motion by defendants, the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., District Judge ), adopting the recommendation and report of Magistrate Judge David N. Hurd, granted summary judgment as to the procedural due process claim but denied it in all other respects. Defendants filed this appeal. We affirm the order of the district court as to the substantive due process claim, and reverse and instruct the district court to enter summary judgment for the defendants as to the remaining claims.
 
 BACKGROUND
 
 2
 Rivera has been incarcerated at Clinton since February, 1990. From that time, he has continually sought transfer to Sullivan Correctional Facility ("Sullivan") in order to attend its college program. According to the allegations in Rivera's complaint, a Clinton corrections counselor, defendant Migdalia Rodriguez, informed Rivera in October, 1990 that she would submit to the proper authorities his request to be transferred to Sullivan. After a period of time, Rivera's family contacted a DOCS official at the Office of Classification and Movement ("OCM"), John Glasheen, who stated that no transfer request had been received. On November 16, Rodriguez then notified Rivera that she had recommended that he be transferred to a maximum-security facility other than Sullivan. Rivera's family again contacted Glasheen, who stated that he had received no transfer request whatsoever. Upon learning this, Rivera wrote a letter of complaint dated November 30, 1990 to a senior corrections counselor named N.D. Smith. In that letter, Rivera requested that a "competent" corrections counselor be assigned to him. Smith replied that defendant P.J. Welch, also a senior corrections counselor, would review his complaint.
 
 
 3
 In a letter dated December 6, 1990, Welch explained that Glasheen had not received the transfer request at the time of Rivera's family's inquiry because of a filing error, and he denied Rivera's request to replace Rodriguez as his counselor. Welch also opined that Rivera was a "marginal candidate" who was "fortunate" to have a transfer request submitted on his behalf, disparaged as "ridiculous" Rivera's claim that his program participation at Clinton was exemplary, and admonished him to concentrate his energies on his program responsibilities rather than "expounding on the 'functions' of a Corrections Counselor." The transfer request, once routed to the appropriate DOCS office, was eventually denied.
 
 
 4
 On December 10, 1990, Rivera was erroneously transferred without his consent to a voluntary Alcohol and Substance Abuse Training ("ASAT") program at Clinton. Rivera filed a grievance alleging that Welch, who coordinated the ASAT program, vindictively sought to provoke him to refuse program participation at Clinton in order to jeopardize his potential transfer to Sullivan. Defendant Senkowski, the superintendent of Clinton, resolved the grievance by notifying Rivera that the assignment was erroneous, that Rivera at his request had been removed from the program, and that an inmate could not be punished for refusal to participate in the voluntary ASAT program.
 
 
 5
 According to the complaint, Welch and Rodriguez continued to make life difficult for Rivera after the grievance was filed. They conspired to backdate various transfer requests, a "vindictive act" that in some unspecified fashion served to deny Rivera access to the Sullivan program. In April 1991, however, Welch and Rodriguez did recommend that Rivera receive his requested transfer to Sullivan. OCM again denied the transfer application.
 
 
 6
 On May 8, 1991, OCM erroneously sent Rivera to appear in Livingston County Court to answer for an assault charge against another inmate with the same name. After the incident, Rivera contacted various members of the DOCS bureaucracy to make sure that the error did not interfere with his pending transfer request. When a corrections counselor asked Welch what to do in response to Rivera's inquiries, Welch told him not to take any action. While Rivera faults defendant (but not appellant) "John Doe" in OCM for this miscue, he does not allege that any of the defendants-appellants--Senkowski, Smith, Welch, or Rodriguez--played any role in causing the episode to occur.
 
 
 7
 On May 21, 1991, fifteen months following his arrival at Clinton, Rivera was designated a "Central Monitoring Case" (CMC) according to DOCS Directive 0701 based upon his 1975 escape from a prison facility. CMC status indicates that an inmate requires close supervision; it does not preclude an inmate's transfer to any facility or assignment to any program, but it does require that any transfer be reviewed and approved by the DOCS Inspector General.
 
 
 8
 Rivera, upset at his sudden reclassification, notified the Clinton Superintendent's office that he would no longer participate in programs at the facility. As a result, Rivera was placed on DOCS Limited Privilege Status as of August, 1991, which sharply circumscribes access to various services and amenities available at the prison. Under Clinton policy, full privileges are restored once the inmate recommences participation in prison programs. While on Limited Privilege Status, Rivera was limited to "keeplock recreation" in the company of inmates under disciplinary sanctions. On two occasions, Rivera was attacked by other inmates during recreational periods.
 
 
 9
 Rivera commenced this action pro se in November, 1992. After filing the complaint, Rivera moved for a preliminary injunction. Defendants cross-moved for summary judgment. Adopting a report and recommendation prepared by the magistrate judge, the district court determined that Rivera had failed to state a procedural due process claim.
 
 
 10
 The district court ruled, however, that judgment for defendants as a matter of law was inappropriate on Rivera's equal protection claim, in which he asserted that inmates in Limited Privilege Status at Clinton were subjected to a more restrictive, even punitive, environment than similarly situated inmates at other facilities. It also read Rivera's complaint to state a claim under Sec. 1983 for infringement of his substantive due process right to be free from retaliation for filing grievances with a government agency. See Jones v. Coughlin, 45 F.3d 677, 679-80 (2d Cir.1995). The district court held that Rivera's "sudden classification as a Central Monitoring Case" after the filing of a grievance against Welch created a genuine issue of material fact as to retaliation. Finally, the district court rejected defendants' defense of qualified immunity as to the retaliation claim since (1) the constitutional right against retaliation had been clearly established by 1990 and (2) defendants' acts could not be said to be objectively reasonable as a matter of law given the disputed issues of fact. It also denied as "premature" the qualified immunity defense as to the equal protection claim since the defendants had not yet addressed Rivera's equal protection claim. Although Rivera alleged that Clinton's limited-privileges policies violated the Eighth Amendment, the district court did not address that claim, perhaps treating it as subsumed within Rivera's equal protection claim.
 
 
 11
 Defendants Senkowski, Welch, Smith, and Rodriguez appeal from the district court's order insofar as it denied their motion for summary judgment on the basis of qualified immunity.
 
 DISCUSSION
 I. Appellate Jurisdiction
 
 12
 The affirmative defense of qualified immunity "shields public officials from liability for their discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir.1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)), cert. denied, --- U.S. ----, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Even if a plaintiff's federal rights are well established, "qualified immunity is still available to an official if it was 'objectively reasonable for the public official to believe that his acts did not violate those rights.' " Id. (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir.1991)).
 
 
 13
 While the denial of summary judgment is not ordinarily appealable under 28 U.S.C. Sec. 1291, there is an exception when the district court rejects the qualified immunity defense on a motion for summary judgment. Mitchell v. Forsyth, 472 U.S. 511, 527-30, 105 S.Ct. 2806, 2816-18, 86 L.Ed.2d 411 (1985). The collateral order rule of Mitchell is not a blanket grant of jurisdiction to hear all bases upon which summary judgment may be decided, such as whether the evidence is sufficient to create a genuine issue of material fact as to liability. Johnson v. Jones, --- U.S. ----, ----, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238 (1995). Rather, " 'we have jurisdiction to review appellants' immunity defense only to the extent that it can be decided as a matter of law,' " Cook v. Sheldon, 41 F.3d 73, 77 (2d Cir.1994) (quoting Golino v. City of New Haven, 950 F.2d 864, 868 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992)), based on " 'undisputed facts and in isolation from the remaining issues of the case.' " Johnson, --- U.S. at ----, 115 S.Ct. at 2156 (quoting Mitchell, 472 U.S. at 529 n. 10, 105 S.Ct. at 2817 n. 10.).
 
 
 14
 As noted above, the district court did not address whether defendants had qualified immunity as to Rivera's equal protection claim, and it did not address his Eighth Amendment claim at all. Nonetheless, we have jurisdiction on this appeal to review the district court's determination that Rivera has asserted a cognizable violation of his equal protection rights and to decide in the first instance whether Rivera has stated a claim under the Eighth Amendment. As the Supreme Court has recently stated, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Indeed, in Siegert, the Court declared that the D.C.Circuit should have made this threshold inquiry before determining whether the plaintiff in that case had met the heightened pleading standard that the court required for constitutional tort actions involving claims of improper purpose. Id. at 231-32, 111 S.Ct. at 1792-93. Thus, we have the power to address the purely legal question as to whether plaintiff failed to state a claim, even if the district court did not decide whether the rights asserted were "clearly established" or whether the defendants' acts were objectively reasonable.
 
 II. Equal Protection Claim
 
 15
 The district court determined that defendants were not entitled to judgment as a matter of law on Rivera's equal protection claim, which charged that he was subject to a limited-privileges regime that was "more restrictive, indeed punitive" than that enforced against similarly situated inmates at other facilities in the New York state prison system.
 
 
 16
 While an inmate has a Fourteenth Amendment right not to suffer invidious discrimination vis-a-vis other similarly situated inmates, it is not enough under the Harlow qualified-immunity test that this general right be "clearly established." As the Supreme Court has said,
 
 
 17
 the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent.
 
 
 18
 Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus, in the context of this case, we must make the particularized inquiry whether acts of Clinton prison officials enforcing its limited-privileges restrictions (1) violated Rivera's right to equal protection (2) in a context in which the applicability of the right was clearly established at the time of the violation.
 
 
 19
 Rivera has not asserted a cognizable equal protection claim against any of the defendants. Neither Senkowski, Welch, Smith, nor Rodriguez--all of whose responsibilities are limited to the Clinton facility--had any power over the development, operation, or enforcement of limited-privileges programs at other facilities in the New York system. Ipso facto, they did not have the power to discriminate against Rivera vis-a-vis similarly situated inmates at those facilities. We therefore instruct the district court to enter summary judgment on behalf of all defendants on this claim.
 
 III. Eighth Amendment
 
 20
 The district court did not address Rivera's claim that the current policies at Clinton for inmates on Limited Privilege Status violate the Eighth Amendment. Apparently finding that claim to have no independent merit, the district court seems to have treated it as subsumed in Rivera's equal protection challenge to the Clinton policies. We view it as distinct and address it in the first instance.
 
 
 21
 We find that Rivera's complaint has failed to assert any violation of the Eighth Amendment. To prevail on an Eighth Amendment challenge to prison conditions, an inmate must prove "deliberate indifference." Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991); see also Hathaway, 37 F.3d at 66. There is both an objective and a subjective component to the deliberate-indifference standard: "the alleged deprivation must be, in objective terms, 'sufficiently serious,' " Hathaway, 37 F.3d at 66 (quoting Wilson, 501 U.S. at 298, 111 S.Ct. at 2324), and "the charged official must act with a sufficiently culpable state of mind," id. (citing Wilson, 501 U.S. at 298, 111 S.Ct. at 2324), such that at a minimum he " 'knows of and disregards an excessive risk to inmate health or safety,' " id. (quoting Farmer v. Brennan, --- U.S. ----, ----, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).
 
 
 22
 Leaving aside the question of whether the right was established, we do not think that Rivera "has asserted a violation of a constitutional right at all." Siegert, 500 U.S. at 232, 111 S.Ct. at 1793. He has not alleged any restriction or consequence that approaches deprivations that the Supreme Court has deemed "sufficiently serious" under the Eighth Amendment, such as the "unnecessary and wanton infliction of pain" or "deprivations denying the minimal civilized measure of life's necessities." Wilson, 501 U.S. at 298, 111 S.Ct. at 2324 (quotations omitted). Given the minimal restrictions occasioned by limited-privileges status, and the Clinton policy providing that an inmate can remove himself from this status anytime he accepts a program assignment, we instruct the district court to award summary judgment to defendants on this claim as well.
 
 IV. Retaliation Claim
 
 23
 The district court construed Rivera's complaint to state a claim that the defendants retaliated against him for filing grievances by suddenly causing him to be classified as a CMC inmate on the basis of a 1975 escape despite the fact that the escape had long been noted in his prison record. The district court rejected the defense of qualified immunity because it found that (1) a prisoner's right against retaliation for filing grievances, which was recognized in this circuit at least as early as 1988, see Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir.1988), was clearly established in 1990 and 1991, the time of the alleged violations, and (2) the record in its present state did not permit the court to say as a matter of law that the defendants' acts were objectively reasonable. We agree with the district court that defendants did not have qualified immunity. Defendants would have us go further and decide whether Rivera has created a genuine issue of material fact as to retaliation. Such a determination is beyond our jurisdiction on this appeal.
 
 
 24
 Under DOCS Directive 0701, which governs CMC designations, the DOCS Inspector General is the official responsible for making such designations. Since none of the defendants has the power to assign Rivera CMC status, Rivera's claim, generously read, is that defendants Welch, Smith, and Rodriguez, together or individually, improperly and with retaliatory motive supplied information about his prior escape to cause a change in his status and to interfere with his transfer to Sullivan. Under this theory, defendant Senkowski would be liable as their supervisor.
 
 
 25
 Defendants claim that they cannot be held liable for retaliation if they were merely performing an obligatory function. Section IV.A.3 of Directive 0701 mandates that, if an inmate meets criteria for designation as CMC, the corrections counselor reviewing the inmate's record "shall submit" a referral form to the Inspector General "as soon as practical." Escape or attempted escape is one such criterion. The Inspector General, after seeking a recommendation from OCM, then makes a decision whether the inmate should be designated as having CMC status. The designation procedure is not limited to an inmate's initial admission to a facility; section IV.B.1 of the Directive specifically provides that "[a]ny inmate classified not CMC, or CMC (Rescinded) may be resubmitted for CMC review at any time during his incarceration if his behavior deteriorates or if new evidence is received or located that indicates new review is called for." (emphasis added). Thus, defendants contend, if they located evidence not previously considered in Rivera's prior CMC assessment, they had a duty to submit such information to the Inspector General. Rivera contested below whether his escape record could be considered new evidence, but otherwise he does not dispute the applicability of Directive 0701 to the defendants.
 
 
 26
 In Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir.1994), we held that even if the plaintiff established that retaliation played a "substantial part" in the decision to commit the injurious act, summary judgment was proper if the official would have done the same act "in the absence of the improper reason." Although ordinarily that question is one for the finder of fact, we noted in that case that "the conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration...." Id. (quotation omitted). Accordingly, we upheld the award of summary judgment to the defendant prison officials because it was undisputed that the inmate had committed the conduct that was the basis for the allegedly retaliatory misbehavior report filed by a corrections officer. Id.
 
 
 27
 Unlike the collateral issue appeal in this case, Lowrance was an appeal from a final judgment. Given that procedural posture and the presumption that a prison official's acts to maintain order are done for a proper purpose, we were entirely justified in Lowrance in determining that the evidence was insufficient to create a genuine issue as to whether the prison guard would have filed the misbehavior report in the absence of the improper reason. The Supreme Court's decision in Johnson, however, forbids us to do the same on an appeal of the collateral issue of qualified immunity. See --- U.S. at ----, 115 S.Ct. at 2155. In evaluating that limited issue on the record before us, we agree with the district court that in light of Franco, an inmate's right to be free of retaliation for filing grievances was in 1990 and 1991 a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.
 
 
 28
 We note, however, that Lowrance was decided on March 29, 1994 and may not have been available to the magistrate judge before he filed his report on April 1, 1994. For the benefit of the district court on remand, should defendants renew their motion for summary judgment below, some guidance to the district court as to the applicability of Lowrance is in order. The district court should recognize that the presumption of proper purpose accorded the acts of prison officials is particularly strong when officials act pursuant to a duty imposed by a prison regulation which is observed in practice and is essential to prison discipline and order. In such a case, the inmate's claims must render it unlikely that the prison official would have performed the act absent a retaliatory purpose. We express no opinion on whether Rivera's claims of retaliation suffice.
 
 
 29
 Accordingly, the judgment of the district court, adopting the report and recommendation of the magistrate judge, is affirmed as to the retaliation claim. It is reversed as to the equal protection and Eighth Amendment claims, and we instruct the district court to award summary judgment on those claims to defendants.
 
 
 
 *
 Plaintiff-Appellee declined to submit a brief