Wayne SULLIVAN, Plaintiff,

v.

J. SCHWEIKHARD, Correctional Officer;
J. Buonato, Lieutenant; K. Goeway,
Lieutenant, Defendants.

No. 95 Civ. 0276 (PKL).

United States District Court,
S.D. New York.

June 24, 1997.

June Duffy, Asst. Attorney General, Office of the Attorney General of the State of New York, New York City, for defendants.

Wayne Sullivan, Ossining, NY, Pro Se.

MEMORANDUM ORDER

LEISURE, District Judge.

Plaintiff, Wayne Sullivan, appearing *pro se,* brings this action pursuant to 42 U.S.C. § 1983 against Correctional Officer J. Schweikhard and Lieutenants J. Buonato and K. Goeway for unconstitutional administrative segregation resulting from an allegedly false Misbehavior Report issued by Officer Schweikhard. Plaintiff seeks injunctive and declaratory relief as well as monetary damages. On August 3, 1995, defendants moved to dismiss plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Thereafter, plaintiff amended his complaint on October 13, 1995, and defendants moved to dismiss the amended complaint. This motion was referred to the Honorable Ronald L. Ellis, United States Magistrate Judge. On December 5, 1995, plaintiff requested leave pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, to file a second amended complaint.

On September 30, 1996, Magistrate Ellis issued a Report and Recommendation (the "Report"), recommending that the Court deny defendants Schweikhard and Buonato's motions to dismiss, grant defendant Goeway's motion to dismiss, and deny plaintiff's request to amend his complaint. Defendants have filed objections to the Report, raising issues not brought to the attention of Judge Ellis. Plaintiff submitted a letter in response asking the Court to grant him leave to amend in the event that the motion to dismiss is granted. The Court has reviewed the Report *de novo,* as required by 28 U.S.C. § 636(b)(1). The Court adopts the Background section of the Report, familiarity with which is presumed for purposes of this opinion. The Court also adopts the Report as to Lieutenant Goeway, but writes separately as to Officer Schweikhard and Lieutenant Buonato. For the reasons stated below, the motion to dismiss is granted and leave to amend the complaint is granted in part and denied in part.

DISCUSSION

I. *Motion to Dismiss*

A court may dismiss a claim pursuant to Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In evaluating a motion to dismiss for failure to state a claim, a court must accept as true the factual allegations contained in the complaint. *See Cohen v. Koenig,* 25 F.3d 1168, 1171 (2d Cir.1994). When the plaintiff is proceeding *pro se,* as in the instant action, a court should hold the complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). To survive a motion to dismiss, a plaintiff asserting a claim under 42 U.S.C. § 1983 must allege that (1) "the conduct complained of was committed by a person acting under color of state law," and (2) "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

Plaintiff makes two claims under § 1983. He contends first that defendants deprived him of liberty without due process of law in violation of the Fifth and Fourteenth Amendments, and second that defendants placed him in administrative segregation in retaliation for exercising his First Amendment rights. Defendants moved to dismiss both claims.

A. *Due Process Claim*

Plaintiff alleges that defendants deprived him of a liberty interest without due process of law when he was placed in administrative segregation (known as "keeplock") for nine days,[1] stating simply that defendants violated his rights "at every step of the instant proceedings." Am. Compl. ¶ 9. He contends that New York created a liberty interest

---

1. In his original complaint, plaintiff claimed that he was confined in administrative segregation for six days. Plaintiff offers no explanation as to the change, but it is interesting to note that confining an inmate for six days pending an administrative hearing does not violate the applicable state regulations.

through the enactment of Section 251–5.1 of the Department of Corrections ("DOCS") regulations which states that:

> Where an inmate is confined pending a disciplinary hearing or a superintendent's hearing, the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said disciplinary hearing or superintendent's hearing, but, in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee.

N.Y. Comp.Codes R. & Regs. tit. 7, § 251–5.1(a) (1995). Defendants argue that plaintiff's complaint does not state a cause of action because it only alleges that defendants violated prison regulations and that such violations do not implicate a liberty interest protected by the Constitution. Under the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Court must dismiss plaintiff's due process claim.

■ To state a claim for denial of procedural due process, a plaintiff must establish that: (1) he possessed a liberty interest protected by the Constitution or federal statute; and (2) the requisite process was not provided before he was deprived of that interest. *See id.*, at 483–87, 115 S.Ct. at 2300–02; *Ragland v. Crawford*, No. 95–10069, 1997 WL 53279, at *3 (S.D.N.Y. Feb. 7, 1997). In *Sandin*, the Supreme Court held that the mere enactment of a state statute or regulation does not necessarily create a liberty interest implicating a due process violation. *See Sandin*, at 485–86, 115 S.Ct. at 2301. To establish the existence of a protected liberty interest, an inmate plaintiff must show that his confinement created an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and that, through the enactment of a statute or regulation, the state has granted its inmates a protected liberty interest in remaining free from such confinement. *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (quoting *Sandin*, at 483–85, 115 S.Ct. at 2300).

The Sandin Court held that the inmate plaintiff did not have a liberty interest in remaining free from thirty days of *disciplin-*

*ary confinement.* The Court of Appeals for the Second Circuit has not addressed the implication of *Sandin* on *administrative confinement* but has stated that "*Sandin* may be read as calling into question the continuing viability of our cases holding that New York regulations afford inmates a liberty interest in remaining free from administrative segregation." *Rodriguez v. Phillips*, 66 F.3d 470, 480 (2d Cir.1995); *cf. Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (holding that a twelve day confinement in special housing unit and an eleven month confinement in close supervision unit is not a deprivation of a significant liberty interest). District Courts have extended *Sandin's* analysis to administrative segregation. *See Santana v. Keane*, No. 90–6309, 1996 WL 465751, at *6 (S.D.N.Y. Aug. 14, 1996) (explaining that "[a]lthough *Sandin* addressed disciplinary segregation, the case is still controlling in the present matter involving administrative segregation"); *Powell v. Scully*, No. 92–5334, 1996 WL 145962, at *3 (S.D.N.Y. Apr. 1, 1996) (stating that there was "no reason why [administrative segregation] should not be considered as a less 'atypical' less 'significant deprivation' than [disciplinary segregation]"); *Arce v. Walker*, 907 F.Supp. 658, 662 (W.D.N.Y.1995) (finding "no compelling distinction between the thirty day confinement endured by the plaintiff in *Sandin*, which the Supreme Court expressly found to be insufficient to implicate a due process deprivation, and [plaintiff's] nineteen day confinement"). Based on the reasoning in these cases, this Court concludes that *Sandin's* analysis applies to administrative segregation.

■ In determining whether the inmate in *Sandin* had a liberty interest, the Court looked to whether the conditions and duration of the inmate's sentence were affected by his confinement. See *Sandin*, at 485–87, 115 S.Ct. at 2301–02. Applying the *Sandin* analysis to the present case, the Court finds that plaintiff's nine day confinement in keeplock is neither an atypical nor a significant deprivation implicating a liberty interest.

Confinement in keeplock is a known and usual aspect of the New York prison system and standing alone cannot satisfy *Sandin's*

"atypical" test. *See Sandin*, at 485–86, 115 S.Ct. at 2301. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.; see also Tinsley v. Greene*, No. 95–1765, 1997 WL 160124, at *5 (N.D.N.Y. Mar. 31, 1997) (finding that sixty days in keeplock is not atypical). DOCS regulations provide for the placement of inmates in keeplock and special housing units for reasons of administration, N.Y. Comp.Codes R. & Regs. tit. 7, § 301.4(b) (1995); protection, *id.* at § 301.5; detention, *id.* at § 301.3; reception, diagnosis and treatment, *id.* at § 306; or for any other reason, *id.* at § 301.7(a). *See Tinsley*, 1997 WL 160124, at *5. Plaintiff's confinement in keeplock for administrative reasons is well within the discretion of prison officials, and plaintiff has no liberty interest in remaining free from typical administrative segregation.

Because confinement to keeplock in itself is not "atypical" and does not implicate a protected liberty interest, a plaintiff must allege circumstances which would make his confinement atypical. Plaintiff alleges only that he was deprived of his right to due process by being subjected to nine days of keeplock as a result of an allegedly false Misbehavior Report. He does not allege that he suffered "rare, unique or unusual hardships" in his segregation. *Tinsley*, 1997 WL 160124, at *5. The difference between nine days of confinement and the seven days authorized under prison regulations does not rise to the level of the atypical and significant deprivations discussed in *Sandin*, at 483–85, 115 S.Ct. at 2300 (citing transfer to a mental hospital and involuntary administration of psychotropic drugs as examples of atypical and significant deprivations).

Plaintiff cannot show that the nine days he was confined to keeplock affected the duration of his sentence. When a prisoner is placed in administrative segregation, the circumstances and degree of the inmate's confinement is minimally affected. *See Hewitt v. Helms*, 459 U.S. 460, 473, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983); *accord Eastman v. Walker*, 895 F.Supp. 31, 35 (N.D.N.Y. 1995). Plaintiff does not allege that the keeplock had any adverse effect on his sen-

tence. Moreover, because plaintiff's Misbehavior Report was dismissed at the administrative hearing, the time in keeplock will not affect his sentence or his parole eligibility. *See Hewitt*, 459 U.S. at 473, 103 S.Ct. at 872 (stating that "[t]here is no indication that administrative segregation will have any significant effect on parole opportunities"); *Barnes v. Starks*, No. 95–4891, 1996 WL 648956, at *4 (S.D.N.Y. Nov.6, 1996) (granting 12(b)(6) motion because "misconduct charges were ultimately dismissed . . . [and] confinement thus could not have had an effect on the overall duration of his sentence"); *Santana*, 1996 WL 465751, at *5 (dismissing the claim because nine days in keeplock would not adversely affect the duration of the inmate's sentence).

Furthermore, in cases involving due process claims by inmates of Sing Sing Correctional Facility that are factually similar to the case at bar, this Court has held that placement in administrative segregation does not implicate a liberty interest giving rise to the protection of the Due Process Clause. In *Benton v. Keane*, 921 F.Supp. 1078, 1079 (S.D.N.Y.1996), an inmate of Sing Sing was confined to administrative segregation for 9 days and 5 hours without a hearing, after which the inmate's Misbehavior Report was dismissed. The Court found that the inmate had no liberty interest protected by the Due Process Clause. *See id.; see also Barnes*, 1996 WL 648956, at *4 (granting 12(b)(6) motion because inmate of Sing Sing failed to show that cell confinement deprived him of a constitutionally protected liberty interest); *Camacho v. Keane*, No. 95–0182, 1996 WL 204483, at *2 (S.D.N.Y. Apr. 25, 1996) (dismissing the claim because Sing Sing inmate did not allege that defendants violated a protected liberty interest by confining him to keeplock for forty days); *Schmelzer v. Norfleet*, 903 F.Supp. 632, 634 (S.D.N.Y.1995) (granting 12(b)(6) motion because eleven day confinement in keeplock in Sing Sing does not constitute an atypical and significant hardship implicating a liberty interest). Similarly, in the present case, although placement in administrative segregation for nine days without a hearing may violate DOCS regulations, the extra two days in administra-

tive segregation cannot be construed as atypical.

Numerous District Courts within the Second Circuit have declined to recognize liberty interests in remaining free from confinements similar to or more restrictive than plaintiff's keeplock. *See Hendricks v. C. Centanni,* No. 92–5353, 1996 WL 67721, at *3 (S.D.N.Y. Feb. 16, 1996) (concluding that thirty days in keeplock does not implicate a liberty interest); *Rivera v. Coughlin,* No. 92–3404, 1996 WL 22342, at *5 (S.D.N.Y. Jan. 22, 1996) (finding that eighty-nine days in keeplock "[does] not constitute an atypical or significant hardship sufficient to create a liberty interest"); *Eastman v. Walker,* 895 F.Supp. 31, 35 (N.D.N.Y.1995) (finding that twenty-four hours of additional keeplock did not violate liberty interest); *Uzzell v. Scully,* 893 F.Supp. 259, 263 (S.D.N.Y.1995).

Plaintiff has not alleged that defendants violated a protected liberty interest by confining him to keeplock for nine days. His claims do not approach the restraints that the *Sandin* Court found insufficient to implicate a protected liberty interest. Accordingly, plaintiff's due process claim must fail.

### B. *Retaliation Claim*

■ Plaintiff also alleges that he was placed in administrative confinement in retaliation for prior complaints made about prison conditions. An act done in retaliation against a prisoner for pursuing a grievance violates the prisoner's right to petition the government for the redress of grievances guaranteed by the First and Fourteenth Amendments. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996); *Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988). Defendants moved to dismiss based on the defense of qualified immunity. In their objections to the Report, defendants also argued, for the first time, that plaintiff has failed to state a claim because he has not pled with the specificity required for claims of retaliation. Defendants are not entitled to qualified immunity, but the Court agrees with their newly raised argument. Therefore, the motion to dismiss the retaliation claim must be granted.

### 1. *Qualified Immunity*

■ Under the doctrine of qualified immunity "government officials performing discretionary function[s], generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *accord Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975). To determine whether the plaintiff's claim implicates a clearly established right the court considers whether: "(1) the right was defined with 'reasonable specificity'; (2) the relevant decisional law supports the existence of that right; and (3) under pre-existing law, a reasonable defendant official would have understood that his actions were unlawful." *Bennett v. Tucker,* No. 95–8029, 1996 WL 288202, at *4 (S.D.N.Y. May 30, 1996) (citing *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993)). Therefore, "[i]f the law was clearly established, the immunity defense should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738; *accord Benitez,* 985 F.2d at 666.

■ The alleged retaliatory conduct occurred in October 1994. By 1988, the Court of Appeals for the Second Circuit had clearly established an inmate's right to be free from retaliation for filing grievances. *See Rivera v. Senkowski,* 62 F.3d 80, 85 (2d Cir.1995) (discussing the implication of *Franco,* 854 F.2d at 589–90, on the issue of qualified immunity); *see also Lowrance v. Coughlin,* 862 F.Supp. 1090, 1098 (S.D.N.Y.1994) ("That retaliatory segregated confinement is unconstitutional has been settled law in this circuit since 1979."). Because an inmate's right not to be subject to retaliatory conduct in response to the exercise of his constitutional rights was "clearly established" at the time of the alleged violations, qualified immunity cannot shield these officials from § 1983 liability. *See Bennett,* 1996 WL 288202, at *4; *Lowrance,* 862 F.Supp. at 1098.

2. *Pleading Standards for Claims of Retaliation*

 Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint usually requires a "short and plain" statement of the claim. However, in the Second Circuit claims of retaliation must be pled with greater detail. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). This heightened pleading standard is necessary because retaliation claims are "prone to abuse," in that prisoners could make claims of retaliation for every administrative decision with which they did not agree. *Id.* If courts allowed full discovery for every claim of retaliation, the results would be chaotic. *See id.* Yet, some inmates do have legitimate § 1983 claims which should be heard on the merits. *See id.* Therefore, if a complaint creates a "colorable suspicion" of retaliation, a court should allow some discovery before determining whether a valid claim exists. *See id.; Maurer v. Keane,* No. 96–3273, 1996 WL 732591, at *2 (S.D.N.Y. Dec. 19, 1996). On the other hand, a court should dismiss a complaint if the allegations of retaliatory conduct are "unsupported, speculative, and conclusory." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *see also Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987) (affirming grant of 12(b)(6) motion because allegations of retaliation were conclusory); *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995) (granting motion to dismiss when an inmate alleged that the defendant had retaliated against him because of "an undefined 'legal complaint' made to a superior officer at an unspecified time").

 In the present case, plaintiff's claim of retaliation is "wholly conclusory." Plaintiff pleads with less detail than did the plaintiff in Smith. He identifies neither the officer to whom he made the alleged complaint nor the basis of the alleged complaint. He merely describes defendants' actions as "retaliatory conduct." Am. Compl. ¶¶ 4, 9, 11, 21. Indeed, in plaintiff's most detailed allegation of retaliation he claims that his confinement was "a result of retaliatory conduct for the plaintiff exercising his constitutional rights to complain of the conditions." Am. Compl. ¶ 9. Because plaintiff has not alleged retaliatory conduct with the detail necessary for a claim of retaliation, the claim of retaliation must be dismissed. However, for the reasons stated below, plaintiff may be able to cure the defect in his complaint by amendment.

II. *Leave to Amend*

 Rule 15(a) provides, in relevant part: "A party may amend the party's pleading once as a matter of course.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). "In the absence of any apparent or declared reason—such as ... futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). A futile amendment is one that is clearly frivolous or advances a claim that is legally insufficient on its face, suggesting no colorable grounds for relief. To determine whether an amendment is futile, a court should perform a test comparable to that required by Rule 12(b)(6). *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Peirez. Ackerman & Levine v. Starr,* No. 92–7958, 1994 WL 48811, at *2 (S.D.N.Y. Feb. 17, 1994). Only if it appears beyond doubt that the defect cannot be cured by the amendment should an amendment be deemed futile. *See Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991).

 When granting a motion to dismiss, courts ordinarily allow leave to replead. *See id.* at 48. Moreover, a *pro se* complaint should not be dismissed without leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991); *see also Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) ("[S]parse pleadings by *pro se* litigants unfamiliar with the requirements of the legal system may be sufficient at least to permit plaintiff to amend his complaint to state a cause of action."); *Thompson v. Sullivan,* No. 87–2568, 1992 WL 42188, at *7 (S.D.N.Y. Feb. 27, 1992) (granting leave to amend while granting a motion to dismiss, pursuant to Rule 12(b)(6)).

In the present case, plaintiff cannot allege any set of facts establishing a liberty interest protected by the Due Process Clause. Any attempt to amend the complaint would therefore be futile. Accordingly, leave to amend the complaint as to the due process claim is denied. Plaintiff may, however, be able to allege a set of facts establishing a retaliation claim. The Court's dismissal of plaintiff's retaliation claim is based solely on his failure to state the claim with sufficient detail. Given the wide latitude courts must afford *pro se* plaintiffs, if plaintiff does have a valid retaliation claim, he should be afforded an opportunity to test his claim on the merits. The mere fact that the original complaint and first amended complaints state the same general facts does not establish that a second amended complaint will not survive a 12(b)(6) test. Plaintiff, who may well be unaware of the heightened pleading standard applicable to retaliation claims, may be able to state a cause of action with the specificity required, and therefore, the Court is unable to conclude that an amendment to the complaint would be futile. Accordingly, the Court grants plaintiff leave to amend his retaliation claim.

## CONCLUSION

For the reasons stated above, the due process claim is hereby DISMISSED WITH PREJUDICE, the retaliation claim is DISMISSED WITHOUT PREJUDICE, and leave to amend as to the retaliation claim is GRANTED. Plaintiff shall submit a proposed amended complaint on or before August 5, 1997.

**SO ORDERED.**