Keith MAGUIRE, Plaintiff,

v.

Thomas A. COUGHLIN, Commissioner; Brian F. Malone, Inspector General; John Hall, Deputy Superintendent of Security at Attica State Correctional Facility; Edward Dann, Deputy Superintendent of Security at Auburn Correctional Facility, Defendants.

No. 92–CV–64.

United States District Court, N.D. New York.

Oct. 18, 1995.

Keith Maguire, Bronx, New York, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, Albany, New York (Darren O'Connor, Assistant Attorney General, of counsel), for defendants.

### MEMORANDUM, DECISION, AND ORDER

McAVOY, Chief Judge.

Plaintiff Keith Maguire brought suit against the above-captioned defendants pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth and Fourteenth Amendment rights during the investigation of an escape attempt by other inmates. He seeks compensatory and punitive damages. Defendants filed a motion for summary judgment on the following grounds: 1) plaintiff had no state-created right to be free from limited periods of cell confinement during an investigation of a prison escape; 2) plaintiff's allegations are too conclusory and sparse to support a civil rights claim; and 3) defendants are qualifiedly immune from plaintiff's claims.

This matter was referred to Magistrate Judge David N. Hurd pursuant to a standing order dated August 2, 1985. He issued a Report–Recommendation dated July 13, 1995, in which he recommended granting defendants' motion for summary judgment and dismissing plaintiff's complaint. The Court will now address plaintiff's objections to the Report–Recommendation, to which defendants have not responded.

### I. Background

#### A. Facts

The facts underlying plaintiff's claim are as follows. On March 26, 1991, four dangerous felons escaped from Eastern Correctional Facility, where plaintiff was incarcerated. After two escapees were apprehended, the Inspector General's Office (IGO) commenced an investigation of the escape. On March

27th, Sgt. Joseph Beatty of Eastern New York Correctional Facility awakened plaintiff at 5:30 a.m. and questioned him about the escape. Plaintiff denied any involvement in it.

The following day, March 28th, two men from the IGO interviewed plaintiff about the escape and allegedly threatened him. Later that day, plaintiff was transferred to Downstate Correctional Facility, placed in an isolation cell, "physically manhandled," and finally taken to the Special Housing Unit (SHU).

On March 29th, plaintiff was transferred to Attica Correctional Facility, where officers allegedly under the direct supervision of one Captain Wolf subjected him to "verbal and physical abuse" and confined him in the SHU. On April 1st, pursuant to Defendant Deputy Superintendent Hall's orders, plaintiff was transferred from SHU and allegedly quarantined in keeplock. Later that day, four IGO officers and New York State police officers interrogated plaintiff about the escape and allegedly threatened his life. On April 6th, plaintiff returned to the general population, but he was transferred back to keeplock three days later.

Plaintiff further alleges that on April 10th, he was transferred to Auburn Correctional Facility, where he suffered more verbal and physical abuse before being quarantined in a cell devoid of bed linens. On April 12th, he was placed in SHU, where he remained until April 15th, the date of his transfer to Sing Sing Correctional Facility. At Sing Sing, plaintiff was again placed in quarantine. Plaintiff was paroled from Sing Sing on December 9, 1991.

Between March 28, 1991, when plaintiff's transfers began, and May of that year, plaintiff was never the subject of a misbehavior report and no hearings were held regarding his inter- or intra-prison transfers. Upon plaintiff's "knowledge and belief," Defendants Coughlin and Malone had full knowledge of and condoned the treatment plaintiff received following the escape attempt.

Defendants admit that plaintiff was transferred from Eastern New York Correctional Facility to four other correctional facilities within the space of three weeks, that he was transferred numerous time within most of these facilities, and that during the relevant time span, there were no disciplinary proceedings pending against plaintiff. They also assert that the probable reason for plaintiff's transfers among and within correctional facilities was the facilitation of the ISO's investigation of the escape. Finally, defendants raise the affirmative defense of qualified immunity.

## B. Plaintiff's Claims

Plaintiff asserts two main civil rights claims against defendants. First, he claims that the verbal and physical abuse he allegedly suffered, as well as the absence of bed linens from his Auburn cell, constituted cruel and unusual punishment in violation of the Eighth Amendment. His second claim is that his transfers among and within four New York State correctional facilities within three weeks deprived him of a protected liberty interest without due process of law, in violation of the Fourteenth Amendment.

## C. Magistrate Judge Hurd's Recommendations

Magistrate Judge Hurd recommended granting defendants' summary judgment motion with respect to plaintiff's Eighth Amendment claim for verbal and physical abuse, on the grounds that plaintiff's allegations of abuse are conclusory and "[in]sufficient to support a civil rights claim." He also recommended granting defendants' summary judgment motion with respect to plaintiff's Fourteenth Amendment claim. The Magistrate Judge reasoned that plaintiff had no liberty interest in remaining in the same correctional facility or in remaining free from segregated confinement within a correctional facility. In light of these conclusions, the Magistrate Judge did not reach the issue of qualified immunity.

## D. Plaintiff's Objections

Plaintiff filed numerous objections to Magistrate Judge Hurd's Report–Recommendation. He argues in his supplemental objection that a material question of fact exists as to whether being housed a cell he describes

for the first time as "extremely cold," without bed linens, constitutes cruel and unusual punishment. With respect to his due process claim, plaintiff argues that because defendants transferred and segregated him maliciously, in the absence of disciplinary proceedings against him, and for the purpose of retaliating against him, they deprived him of a protected liberty interest without due process of law. Together with these objections, plaintiff renews his motion for appointment of counsel.

## II. Summary Judgment Standard

Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). When a party seeks summary judgement against a *pro se* litigant, the Court must afford the nonmovant special solicitude. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988).

## III. Discussion

### A. Plaintiff's Eighth Amendment Claims

#### 1. "Verbal and Physical Abuse"

Because defendants move only for summary judgment against plaintiff, the Court will assume for present purposes that plaintiff has at least stated claims on which relief can be granted. To survive defendant's summary judgment motion against his Eighth Amendment claim, plaintiff must al-lege more than that he was subject to "verbal and physical abuse." Prison officers subject a prisoner to cruel and unusual punishment in violation of the Eighth Amendment only when they apply force maliciously and sadistically to cause harm, rather than in a good faith effort to restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S.Ct. 995, 998–99, 117 L.Ed.2d 156 (1992). *See also Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Although a prisoner may have a valid § 1983 claim even if prison officers do not cause him significant injury, a de minimus use of force does not implicate the Eighth Amendment unless it is " 'repugnant to the conscience of mankind.' " *Hudson*, 503 U.S. at 9–10, 112 S.Ct. at 1000 (quoting *Whitley*, 475 U.S. at 327, 106 S.Ct. at 1088). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.' " *Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

Even if defendants or prison officers under their control verbally and physically abused plaintiff, he supplies no evidence to suggest that they applied force maliciously and sadistically to cause harm. Nor is there any evidence that the defendants used more than de minimus force against plaintiff, or that their use of de minimus force was repugnant to the conscience of mankind. Plaintiff's allegations concerning verbal and physical abuse, therefore, cannot withstand defendants' motion for summary judgment.

#### 2. Cell Conditions

Plaintiff's allegations about the conditions in his Auburn cell state a stronger Eighth Amendment claim. To win a conditions-of-confinement claim, a prisoner must satisfy two requirements. First, he must show that prison officials were deliberately indifferent to the conditions in his cell. *Wilson v. Seiter*, 501 U.S. 294, 302–03, 111 S.Ct. 2321, 2326–27, 115 L.Ed.2d 271 (1991). Mere negligence does not suffice. *Id.* at 305, 111 S.Ct. at 2327–28. Second, he must show that

the conditions in his cell constituted an "extreme deprivation." *Hudson,* 503 U.S. at 8–9, 112 S.Ct. at 999–1000. The Court defined "extreme deprivation" when it stated that "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 9, 112 S.Ct. at 1000 (quoting *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324, and *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399). It left further refinement of the phrase "minimal civilized measure of life's necessities" to ever-evolving "community standards of decency." *Id.*

■ Plaintiff alleges that he was confined in a cold cell without bed linens.[1] The Court is not prepared to say as a matter of law that the Eighth Amendment permits such cell conditions. In *Wilson,* the Court stated that "a low cell temperature at night combined with a failure to issue blankets" may deprive the prisoner of an identifiable human need—warmth—in violation of the Eighth Amendment. 501 U.S. at 304, 111 S.Ct. at 2327. Moreover, in *Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir.1988), the Second Circuit reaffirmed its prior holding in *Wright v. McMann,* 387 F.2d 519 (2d Cir.1967), that "deliberate exposure of inmates by prison authorities to bitter cold while in solitary confinement would be evidence of cruel and unusual punishment." There are thus genuine issues with respect to the material facts of whether defendants were deliberately indifferent to the conditions in plaintiff's cell and whether those conditions were sufficiently odious to deprive plaintiff of life's basic necessities.

### B. Plaintiff's Due Process Claims

Plaintiff claims that defendants violated his due process rights by confining him to SHU and keeplock and by transferring him numerous times among and within New York correctional facilities, all without hearings or any disciplinary reason for doing so. In paragraph six of his objections, although not in his complaint, he claims that defendants transferred him for "retaliation and harrassment [sic] purposes."

### 1. Segregated Confinement

■ The Court recently held in *Sandin v. Connor,* — U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that where the conditions of disciplinary segregation are substantially similar to the conditions imposed upon inmates in administrative segregation and protective custody, disciplinary segregation does not present "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at ——, 115 S.Ct. at 2301. Plaintiff neither alleges nor offers evidence to show that relative to the ordinary incidents of prison life, *id.* at ——, 115 S.Ct. at 2300, the conditions of his segregated confinement presented an "atypical, significant deprivation" sufficient to create a liberty interest. Summary judgment against plaintiff as to this aspect of his claim is therefore appropriate.

### 2. Transfers

■ The Due Process Clause does not "in and of itself protect a duly convicted prisoner against the transfer from one institution to another within the state prison system." *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451, *reh'g denied,* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976). *See also Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) (noting that New York prison officers have broad discretion to transfer prisoners). Moreover, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). A prisoner does have a viable § 1983 claim, however, if prison authorities transferred him in retaliation for exercising his constitutional rights.

---

1. Although plaintiff nowhere alleges that defendants acted with deliberate indifference to his cell conditions, he does allege that Defendant Dann was "involved" in the treatment he received at Auburn Correctional Facility. Where a *pro se* prisoner appears to have a viable Eighth Amendment claim against prison officers, the Court will not dismiss it on the basis that the plaintiff has failed to allege every element with technical accuracy. Both parties will have an opportunity to gather and present facts about the defendants' mental states.

*Meriwether v. Coughlin,* 879 F.2d 1037, 1046 (2d Cir.1989).

In light of this precedent, merely transferring a prisoner among and within four correctional facilities in the span of three weeks, for the asserted reason of carrying out an escape investigation, does not implicate a protected liberty interest. What is more, plaintiff never alleges, and there is no evidence to suggest, that he had exercised any constitutional rights in retaliation for which defendants might have acted. Summary judgment against plaintiff on his transfer-based due process claims is therefore proper.

**C. Qualified Immunity**

Defendants raised qualified immunity as an affirmative defense. In light of the foregoing, the Court only needs to determine whether defendants are entitled to qualified immunity with respect to plaintiff's claim that the conditions in his cell were sufficiently bad to violate the Eighth Amendment.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Furthermore, the contours of the right that the defendants are alleged to have violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In the Second Circuit, three factors determine whether a particular right was clearly established at the time the defendants allegedly violated it: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503

U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

Every prison officer is presumably well aware of prisoners' Eighth Amendment rights to be free from cruel and unusual punishment. Inadequate cell conditions have formed the basis of viable Eighth Amendment claims at least since the Supreme Court decided *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Although the Supreme Court decided *Wilson, supra,* a few months after the conduct of which plaintiff complains allegedly occurred, the Second Circuit decided *Wright, supra,* in 1967 and *Corselli, supra,* which characterizes the deliberate placement of an inmate in a bitterly cold solitary confinement cell as "evidence of" cruel and unusual punishment, in 1988. Therefore, the Eighth Amendment right that defendants allegedly violated was clearly established when they allegedly violated it; they are not entitled to qualified immunity with respect to plaintiff's claims about the conditions in his Auburn cell.

**D. Appointment of Counsel**

In his objections to the Report–Recommendation, plaintiff renews his motion for appointment of counsel. This Court denied plaintiff's earlier motion, with leave to renew, because he had failed to submit evidence demonstrating that he had been unable to obtain counsel through the private sector or public interest law firms. *See Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986). Plaintiff has since satisfied this requirement with respect to public interest law firms, but he has failed to show that he is unable to secure representation through the private sector. Considering that plaintiff's Eighth Amendment claim has survived summary judgment, that he has been paroled, and that he seeks substantial monetary damages, he should have little difficulty securing an attorney to represent him on a contingency basis. *See McDonald v. Head Crim. Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988); *Ferguson v. Fleck,* 480 F.Supp. 219 (W.D.Mo. 1979).

**IV. Conclusion**

Defendants' motion for summary judgment as to plaintiff's Eighth Amendment claim for "verbal and physical abuse" is GRANTED.

Defendants' motion for summary judgment as to plaintiff's Eighth Amendment claim for constitutionally inadequate cell conditions is DENIED.

Defendants' motion for summary judgment as to plaintiff's Eighth Amendment claim for constitutionally inadequate cell conditions on the ground of qualified immunity is DENIED.

Defendants' motion for summary judgment as to plaintiff's due process claims is GRANTED.

Plaintiff's renewed motion for appointment of counsel is DENIED without prejudice to renew it in the future.

**IT IS SO ORDERED.**