**Michael WALKER, Plaintiff,**

**v.**

**Sheriff Patrick MAHONEY, Warden Wesley Benosky, Sergeant Investigator Roy Fries, Investigator Jack Santacroce, Lieutenant Larkin, Lieutenant Bennett and Sergeant Mealy, Defendants.**

No. 94–CV–1407 (JS).

United States District Court,
E.D. New York.

Feb. 9, 1996.

Michael Walker, Dannemora, NY, pro se.

Garrett W. Swenson, Jr., Assistant County Attorney, Suffolk County Department of Law, Hauppauge, NY, for Defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

Plaintiff Michael Walker, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against several state officials employed at the Suffolk County Correctional Facility. The plaintiff alleges that the defendants deprived him of a liberty interest without due process of law by placing him in segregated confinement for a period of 23 days. Pending before the Court is the defendants' motion to dismiss the plaintiff's com-

plaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed herein, the defendants' motion is granted and the plaintiff's complaint is dismissed without prejudice in its entirety.

## FACTUAL BACKGROUND

In his complaint, the plaintiff alleges that on or about January 3, 1993, several officials of the Suffolk County Correctional Facility conducted a search of his cell, and of his person. It was later reported to the plaintiff that the search of his cell resulted in the discovery of a "shank." As a result of this purported discovery of contraband, the plaintiff was placed in administrative segregation. In addition, the plaintiff was provided at that time with a form dated January 3, 1993, entitled "Notice of Charge and Basis for Disciplinary Action." *See* Pl.'s Compl.Ex. This form indicated that a report, accusing the plaintiff of possession of a dangerous weapon and destroying county property, had been forwarded to the warden. The plaintiff acknowledged receipt of this notice by affixing his signature thereon. *See id.*

On January 8, 1993, plaintiff attended a hearing concerning the charges levied against him in the disciplinary report. At this hearing, the plaintiff contended that he had no knowledge of the circumstances that resulted in the discovery of a shank in his cell. The hearing office, defendant Sergeant Mealy, found the plaintiff guilty of the charges against him, and assessed him punitive segregation, for a period of five days, as a penalty. Because the plaintiff had already spent five days in administrative segregation pending his disciplinary hearing, the plaintiff's administrative confinement was credited in full satisfaction of his penalty, and Sergeant Mealy informed him that he could return to the "general prison population." Upon being asked by defendant Mealy whether he wished to return to his original tier, the plaintiff responded in the affirmative.

Subsequent events delayed the plaintiff's return to the general inmate population for a period of 18 days. According to the complaint, after Mealy inputted plaintiff's name into a computer program to determine his

eligibility to return to the general prison population, Mealy informed the plaintiff that he could not leave administrative segregation at that time because, having been placed in administrative segregation by security personnel, security clearance was required for his return to the general population. On each succeeding day, plaintiff requested to speak with security personnel concerning his return to the general prison population, but his requests were not responded to. In addition, the plaintiff received somewhat of a "runaround," as on separate occasions he spoke to defendants Lieutenant Bennett and Lieutenant Larkin, and was told by each to direct his inquiry to "security."

Plaintiff subsequently filed a complaint with the prison's inmate grievance committee, which brought this matter to the attention of defendants Sergeant Fries and Investigator Santacroce. The plaintiff alleges that Santacroce told Henry Hobson, the president of the inmate grievance committee, to tell the plaintiff that security personnel would contact him concerning his return to the general prison population. No such communication followed; rather, plaintiff was not informed of the reasons for his continued administrative confinement and was not afforded a hearing with respect to this matter.

Plaintiff's circumstances did not change until inmates on his tier in the special housing unit commenced a hunger strike. On the second day of the hunger strike, plaintiff was summoned to the security office and brought before defendants Santacroce and Fries. These defendants informed the plaintiff that he would be returned promptly to the general population, and warned him that if he caused trouble, he would spend the remainder of his prison sentence in administrative segregation. Santacroce and Fries also told the plaintiff that if he continued his hunger strike, he would not be released from administrative confinement.

According to the plaintiff, his experience in administrative segregation entailed confinement to his cell for 23 hours per day, and restrictions upon his ability to exercise, shower, make phone calls, see visitors and clean his cell. During his administrative confinement, plaintiff also was required to feed and clean up after other inmates. In addition, the lights remained on at all times, air ventilation was "inadequate," and the plaintiff received "verbal abuse" from the correctional officers. Finally, the plaintiff alleges that during this 23–day period, he was denied adequate access to the law library and to the assistance of law clerks.

In the final analysis, plaintiff spent 23 days in segregated confinement, from January 3, 1993 through January 26, 1993. See Pl.'s Aff. ¶ 5, at 2. Of these 23 days, the first 5 days were recharacterized as disciplinary segregation, while the last 18 days were denominated as administrative segregation.

The defendants now move to dismiss the plaintiff's complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. First, the defendants contend that the plaintiff lacks a legally protected liberty interest in remaining in the general inmate population upon which to ground a procedural due process claim. Second, the defendants assert that even assuming the plaintiff possessed such a liberty interest and was deprived thereof without due process of law, they are nevertheless shielded from suit for damages under the doctrine of qualified immunity insofar as their conduct did not violate any clearly-established federal constitutional rights of which a reasonable state official would have known. Last, defendant Mahoney asserts that the complaint must be dismissed against him for failure to allege his personal involvement in a constitutional deprivation. The plaintiff has consented to the dismissal of his complaint against Mahoney on this basis. See Pl.'s Mem. of Law, at 6.

## DISCUSSION

### I. Standards Governing Motion to Dismiss

■ A district court should grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*,

467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *Id.* at 249, 109 S.Ct. at 2906; *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 167–69, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (citing Fed.R.Civ.P. 8(a)(2) to demonstrate liberal system of 'notice pleading' employed by the Federal Rules of Civil Procedure). In addition, the Supreme Court instructs that where, as in the instant case, the plaintiff is proceeding *pro se,* the district court must liberally construe the complaint's allegations. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

## II. Asserted Liberty Interest in Remaining in the General Inmate Population

In his response in opposition to the defendants' motion to dismiss his complaint, the plaintiff argues that the defendants deprived him of a liberty interest without due process of law by removing him from the general prison population without constitutionally sufficient procedures. Specifically, plaintiff contends that pursuant to *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the State of New York, through its use of mandatory language and substantive predicates in its prison regulations governing the issuance of misbehavior reports, the placement of inmates in administrative segregation pending a disciplinary hearing, the notice afforded inmates concerning classification determinations, and the administrative procedures attending a prison facility's review of an inmate's classification status, has created liberty interests protected by the Due Process Clause of the Fourteenth Amendment. *See* N.Y.Comp.Codes R. & Regs. tit. 9 [hereinafter, 9 NYCRR], §§ 7006.4(b) (1995) (specifying information that must be included in inmate misbehavior report), 7006.7 (1995) (specifying procedures applicable to placement of inmates in administrative segregation pending a disciplinary proceeding), 7013.8(f) (1995) (requiring notifi-

cation of inmate, either verbally or in writing, within 24 hours after a classification determination has been made), 7013.8(g) (1995) (requiring written verification of notice to inmate described in NYCRR § 7013.8(f), and specifying content requirements therefor), 7013.9(c)(2) & (3) (1995) (requiring review of inmate's classification status upon inmate's involvement in a "serious unusual incident," or upon a written request by facility staff). In this regard, the Second Circuit Court of Appeals has held that an inmate has a liberty interest in not being confined to administrative segregation in a "special housing unit" [hereinafter "SHU"] for an extended period of time without a hearing, so as to trigger the procedural protections of due process. *See Wright v. Smith,* 21 F.3d 496, 499 (2d Cir. 1994); *see also Matiyn v. Henderson,* 841 F.2d 31, 36 (2d Cir.) (inmate possessed liberty interest in not being confined to administrative segregation, pursuant to New York's regulations governing "protective admission," for a period of four days without receiving notice), *cert. denied,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988). According to the plaintiff, the defendants deprived him of the liberty interests he asserts without due process of law, by failing to provide him with constitutionally sufficient procedures attending their deprivation. *See Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974); *see, e.g., Hewitt,* 459 U.S. at 476, 103 S.Ct. at 874 (holding that an inmate placed in administrative confinement is entitled to "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation"); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("[A]n inmate who is facing prison disciplinary charges that could result in punitive segregation is entitled, at a minimum, to advance written notice of the charges against him and of the evidence available to the factfinder. He must be permitted to marshal the facts and prepare his defense. A written record of the proceedings must be kept. The inmate must be allowed to call witnesses and present documentary evidence in his defense."), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88

L.Ed.2d 916 (1986). The plaintiff further asserts that the defense of qualified immunity is unavailable to the defendants because the procedural due process rights in question were clearly established at the time of the conduct alleged, and moreover because it would be objectively unreasonable for the defendants to believe that their actions did not violate his federal constitutional rights. *See Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987); *see also Wright,* 21 F.3d at 500 (qualified immunity defense *unavailable* where inmate confined to administrative segregation without a hearing for a period of 67 days); *Russell v. Coughlin,* 910 F.2d 75, 79 (2d Cir.1990) (qualified immunity defense *unavailable* where prisoner administratively confined under "keeplock" to his cell for a period of 10 days without receiving notice of the charges against him, or notice of a hearing); *cf. Rodriguez v. Phillips,* 66 F.3d 470, 481 (2d Cir.1995) (defendant protected by qualified immunity defense because it was objectively reasonable for the defendant correctional officer to believe that inmate's 3–day administrative confinement, without an opportunity to be heard, did not violate the inmate's constitutional rights); *Gittens v. Le-Fevre,* 891 F.2d 38, 41–43 (2d Cir.1989) (although due process violation resulted from confinement of inmate to his cell without any opportunity to make a statement challenging his confinement until a disciplinary hearing 7 days later, defendants were protected by qualified immunity defense because it was objectively reasonable for the defendants to believe that New York's prison regulations, providing for a disciplinary hearing within 7 days, satisfied the constitutional requirement that an inmate in administrative confinement be afforded an opportunity to be heard within a reasonable time); *Matiyn,* 841 F.2d at 36–37 (qualified immunity defense available in view of regulation's lack of clarity, and objective reasonableness of belief that administrative detention without notice under protective administrative regulations did not contravene a liberty interest).

The plaintiff's contention that his due process rights were violated through his segregated confinement for a period of 23 days without constitutionally sufficient procedures is largely foreclosed by the Supreme Court's recent decision in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In *Sandin,* a prisoner, who was serving an indeterminate sentence of 30 years to life in a Hawaii prison, brought a civil-rights action against prison officials alleging that the defendants deprived him of procedural due process when an adjustment committee refused to allow him to present witnesses during a disciplinary hearing, and then sentenced him to *disciplinary* segregation in the Special Holding Unit, for a period of 30 days, for misconduct. *See Sandin,* —— U.S. at ——, 115 S.Ct. at 2296. The Supreme Court held that neither the state prison regulations nor the Due Process Clause itself afforded the prisoner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See Sandin,* —— U.S. at ——, 115 S.Ct. at 2302.

In developing its analysis, the *Sandin* Court first noted that, under *Wolff,* states may in certain circumstances create liberty interests which are protected by the Due Process Clause. *See Sandin,* —— U.S. at ——, 115 S.Ct. at 2300. These interests, however, generally will be "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.* (citations omitted) (emphasis added). According to the *Sandin* Court, the methodology used in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and later cases had impermissibly shifted the focus of the liberty interest inquiry from one based on the nature of the deprivation to one based on the language of a particular regulation. Under *Hewitt*'s methodology, prison regulations had been examined solely to see whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the conditions of the prisoner's confinement. *See Sandin,* —— U.S. at —— ——, 115 S.Ct. at 2298–99. This

methodology, in turn, led courts, such as the Ninth Circuit Court of Appeals—which the Supreme Court overturned in *Sandin*—to find liberty interests to be created through the negative implications of mandatory language. *See id.* at ——, 115 S.Ct. at 2300. In the view of the *Sandin* Court, this approach produced the undesirable effects of "creat[ing] disincentives for States to codify prison management procedures," and promoting "the involvement of federal courts in the day-to-day management of prisons...." *Id.* at ——, 115 S.Ct. at 2299.

For the foregoing reasons, the *Sandin* Court regarded the approach of *Hewitt*, both in its formulation and in its consequences, to be at variance with an analysis designed to assess the "nature" of the deprivation worked upon the inmate. *See id.* at ——, 115 S.Ct. at 2298 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972)). Focusing instead upon the nature of the 30 days' disciplinary confinement imposed upon the inmate in relation to his overall prison environment, the *Sandin* Court concluded that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2301.

■ In the present case, even upon according a liberal construction to the plaintiff's *pro se* complaint, this Court is unable to conclude that the plaintiff's segregated confinement for a period of 23 days imposed an "atypical and significant hardship [upon him] in relation to the ordinary incidents of prison life." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2300. Accordingly, the plaintiff's procedural due process claim must be dismissed.[1] The Court observes that this determination is consistent with the weight of authority that has applied *Sandin*. *See, e.g., Auburn Inner City Prison Branch v. Coughlin*, No. 94–2720, 1995 WL 746638, at *1 (2d Cir. Dec. 14,

1995) (unpublished disposition) (citing *Sandin* for proposition that prisoner's constitutional rights were not violated as a result of 60 days' disciplinary confinement to a SHU); *Hutchinson v. Adorno*, No. 94–2652, 1995 WL 737493, at *1–*2 (2d Cir. Dec. 13, 1995) (unpublished disposition) (71 days' segregated confinement did not impose an atypical and significant hardship on prisoner in relation to the ordinary incidents of prison life); *Quartararo v. Catterson*, 917 F.Supp. 919, 937–38 (E.D.N.Y.1996) (14 days' confinement to SHU did not impose an atypical and significant hardship upon prisoner in relation to the ordinary incidents of prison life, in light of sentence of from 9 years to life); *Carter v. Carriero*, 905 F.Supp. 99, 104 (W.D.N.Y. 1995) (270 days' disciplinary confinement in SHU does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life, and therefore does not trigger a liberty interest); *Schmelzer v. Norfleet*, 903 F.Supp. 632, 634–35 (S.D.N.Y. 1995) (11 days' confinement in keeplock does not implicate liberty interest under *Sandin* ); *Malsh v. Austin*, 901 F.Supp. 757, 761 (S.D.N.Y.1995) (rescheduling of routine dental appointment does not impose an atypical or significant hardship on a prisoner so as to give rise to a liberty interest); *Maguire v. Coughlin*, 901 F.Supp. 101, 106 (N.D.N.Y. 1995) (transfer of prisoner among and within four correctional facilities in the span of three weeks does not implicate a protected liberty interest); *Cody v. Jones*, 895 F.Supp. 431, 441 (N.D.N.Y.1995) (applying *Sandin*, no liberty interest triggered through failure of prison regularly to accord plaintiff (i) one hour of daily outdoor exercise for a period of several months, (ii) two meals out-of-cell per day for a period of 32 days, or (iii) three hours out-of-cell time per day for a period of 32 days); *Eastman v. Walker*, 895 F.Supp. 31, 35 (N.D.N.Y.1995) (4 days' administrative confinement does not implicate liberty interest under *Sandin* ); *Uzzell v. Scully*, 893 F.Supp. 259, 262–63 (S.D.N.Y.1995) (placement of plaintiff in keeplock does not impli-

---

1. The *Sandin* analysis applies retroactively to the case at bar in accordance with general principles of construction that favor applying judicial decisions retroactively. *See Solem v. Stumes*, 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d

579 (1984); *see also Uzzell v. Scully*, 893 F.Supp. 259, 263 n. 8 (S.D.N.Y.1995) (noting that presumption against statutory retroactivity does not apply to judicial decisions).

cate a liberty interest under *Sandin* ); *Brooks v. Di Fasi,* No. 93–CV–0197E(H), 1995 WL 780976, at *5 (W.D.N.Y. Dec. 29, 1995) (180 days' disciplinary confinement in a SHU does not implicate a liberty interest under *Sandin* ); *Jermosen v. Coughlin,* No. 81–CV–0974E(M), 1995 WL 780978, at *3 (W.D.N.Y. Dec. 29, 1995) (confinement to cell for 7 days, and loss of certain privileges for 30 days, fails to implicate liberty interest under *Sandin* ); *Rosario v. Selsky,* No. 94 Civ. 6872 (MBM), 1995 WL 764178, at *5 (S.D.N.Y. Dec. 28, 1995) (less than three months' segregated confinement failed to implicate liberty interest under *Sandin* ); *Tulloch v. Coughlin,* No. 91–CV–0211E(M), 1995 WL 780970, at *2 (W.D.N.Y. Dec. 22, 1995) (180 days' disciplinary confinement in SHU does not implicate liberty interest under *Sandin* ); *Arce v. Walker,* 907 F.Supp. 658, 661–63 (W.D.N.Y.1995) (confinement to SHU for 19 days, and accompanying loss of exercise privileges, fails to implicate liberty interest under *Sandin* ); *Martin v. Mitchell,* No. 92–CV–716, 1995 WL 760651, at *3 (N.D.N.Y. Nov. 24, 1995) (30 days' confinement in keeplock fails to implicate liberty interest under *Sandin* ); *Jackson v. Keane,* No. 93 Civ. 6453 (JFK), 1995 WL 622593, at *3 (S.D.N.Y. Oct. 24, 1995) (14 days' confinement, without more, under *Sandin,* does not constitute an atypical and significant hardship implicating a constitutionally protected liberty interest); *McMiller v. Wolf,* No. 94–CV–0623E(F), 1995 WL 529620, at *1–*3 (W.D.N.Y. Aug. 28, 1995) (confinement to SHU for 183 days as a result of alleged filing by prison official of false misbehavior report fails to implicate liberty interest under *Sandin* ); *Kozlek v. Papo,* No. 94 Civ. 1429 (DAB), 1995 WL 479410, at *1–*2 (S.D.N.Y. Aug. 11, 1995) (liberty interest not triggered as a result of prisoner's confinement for 10 days to a SHU); *see also Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995) (not reaching question of whether prisoner's three-day detention in administrative segregation implicated a liberty interest, but noting that "*Sandin* may be read as calling into question the continuing viability of our cases holding that New York regulations afford inmates a liberty interest in remaining free from administrative segregation"); *cf. Quartararo,* 917 F.Supp. at 940–41 (liberty interest created in the removal of a prisoner from a work release program in which he has been gainfully employed); *Delaney v. Selsky,* 899 F.Supp. 923, 927–28 (N.D.N.Y.1995) (material question of fact as to whether 197 days' confinement to SHU implicated protected liberty interest, where the inmate alleged that the conditions of his cell caused him to sustain back problems as a result of his unusual height). *But cf. Dominique v. Weld,* 73 F.3d 1156, 1159–61 (1st Cir.1996) (revocation of prisoner's work release privileges did not infringe any protected liberty interest).

Finally, the Court observes that the plaintiff does not indicate the duration of the sentence he was serving at the time of the incidents in question. This omitted fact may be material because the Supreme Court, in *Sandin,* suggests that the duration of an inmate's sentence is of significance in evaluating whether the alleged loss of liberty portends a departure from the circumstances faced by other "inmates in the general population." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301; *see Quartararo,* 917 F.Supp. at 964. Thus, for example, it would appear that an inmate's segregated confinement for a period of 23 days *might* impose an atypical and significant hardship upon the inmate in relation to the ordinary incidents of prison life if the duration of his sentence itself was only a few months. Accordingly, because the Court is unable to conclude at this juncture that it would be futile to permit the plaintiff to amend his complaint to plead an atypical and significant hardship upon which a state-created liberty interest may be grounded, dismissal of the plaintiff's complaint shall be without prejudice to file an amended complaint in accordance with the analysis stated herein.[2]

---

**2.** In view of its conclusion that the plaintiff's complaint fails to plead a deprivation of a liberty interest, the Court does not reach the defendants' argument that dismissal of this claim is warranted on the basis of qualified immunity. The Court observes, however, that a substantial question is presented concerning whether a qualified immunity defense would be available with respect to

## III. Substantive Constitutional Right of Access to the Courts

■ In accordance with *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), the plaintiff's *pro se* complaint may be liberally construed to allege that the defendants deprived him of his substantive due process right of access to the courts during the 23 days that he was detained in segregated confinement, insofar as the plaintiff asserts that, during this period, he was denied adequate access to the law library and to the assistance of law clerks. The Supreme Court has held that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977); *see also Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987) [3] (A substantive constitutional violation occurs where a state official's deliberate misconduct has the effect of depriving an individual of his or her right of access to the courts.); *Jones v. Smith,* 784 F.2d 149, 151 (2d Cir.1986) (Inmates were entitled to a hearing on their claim that prison mail policy violated their right of access to the courts.); *cf. Taylor v. Coughlin,* 29 F.3d 39, 40 (2d Cir.1994) (per curiam) ("[T]here is no constitutional right to a typewriter as an incident to the right of access to the courts.") (internal quotes omitted). Because the right of access to the courts is a *substantive* constitutional right, its vitality was unscathed by the Supreme Court's decision in *Sandin.* See *Sandin,* —— U.S. at —— n. 11, 115 S.Ct. at 2302 n. 11.

■ The right of access to the courts embraces an inmate's rights to obtain adequate access to a law library, and to the assistance of persons trained in the law. *See Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498. In the present case, however, in view of the relatively short period of time in which the plaintiff was kept in segregated confinement—23 days—any abridgment of this constitutional right was *de minimis* and therefore insufficient to sustain a cause of action. *See Jones,* 784 F.2d at 152 (affirming dismissal of right-of-access claim in light of short period of confinement to SHU—30 days—which the court regarded as *de minimis*). Further, in light of the Second Circuit's decision in *Jones,* any alleged right-of-access claim stemming from the plaintiff's segregated confinement would be overcome by a qualified immunity defense. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see, e.g., Curro v. Watson,* 884 F.Supp. 708, 719–24 (E.D.N.Y.1995) (dismissing on qualified immunity grounds substantive due process claim assailing deprivation of right of access to the courts), *aff'd,* No. 95–2327, 1996 WL 19172 (2d Cir. Jan. 16, 1996). For these reasons, to the extent that the plaintiff's complaint may be construed to allege a right-of-access claim, such claim likewise must be dismissed.

the plaintiff's continued administrative confinement for a period of 18 days following his disciplinary hearing. *See Wright,* 21 F.3d at 500 (holding that qualified immunity defense was *unavailable* where inmate was confined to administrative segregation without a hearing, for a period of 67 days, in view of New York regulation which gave correction officials clear notice that confinement could not be continued beyond 14 days without a hearing, and leaving open the question as to whether "a modest period of confinement without a hearing" would suffice to overcome a qualified immunity defense); *see also Russell,* 910 F.2d at 79 (qualified immunity defense *unavailable* where prisoner was administratively confined under "keeplock" to his cell for a period of 10 days without receiving notice of the charges against him, or notice of a hearing); *Gittens,* 891 F.2d at 41–43 (although due process violation resulted from confinement of inmate to his cell without any opportunity to make a statement challenging his confinement until a disciplinary hearing 7 days later, defendants were protected by qualified immunity defense because it was objectively reasonable for the defendants to believe that New York's prison regulations, providing for a disciplinary hearing within 7 days, satisfied the constitutional requirement that an inmate in administrative confinement be afforded an opportunity to be heard within a reasonable time).

3. In *Morello,* a prison inmate brought a § 1983 action alleging that state prison officials intentionally confiscated a legal brief he had been preparing for an appeal, and some accompanying legal research materials. *See Morello,* 810 F.2d at 345. On appeal, the Second Circuit reversed the dismissal of the plaintiff's complaint, finding that the plaintiff's allegation "describe[d] an unconstitutional denial of Morello's right of access to the courts." *Id.* at 346.

*CONCLUSION*

For the foregoing reasons, the defendants' motion to dismiss the plaintiff's complaint is GRANTED and the complaint is dismissed in its entirety. This dismissal shall be without prejudice to file an amended complaint, consistent with the Court's analysis herein, within 60 days of the date that this Memorandum and Order is docketed.

SO ORDERED.